[No. 26010. *En Banc.* August 10, 1936.]

YAKIMA FRUIT GROWERS ASSOCIATION *et al., Respondents,* v. HAROLD H. HENNEFORD *et al., Appellants.*[1]

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellants.

*Bayley & Croson, Velikanje & Velikanje,* and *Richards, Conklin & Delle,* for respondents.

MILLARD, C. J.—Defendant members of the state tax commission appeal from a decree of the superior court

[1] Reported in 60 P. (2d) 62.

for Thurston county which enjoins the defendants from enforcing against plaintiffs the occupational tax imposed by Title II, chapter 180, Laws of 1935, p. 709 (Rem. 1935 Sup., § 8370-4 [P. C. § 7030-64] *et seq.*). All of the respondents are domestic corporations. The facts will be stated only as to one of the respondents, that of the Yakima County Horticultural Union, inasmuch as their plan of organization and method of doing business are substantially the same.

The Yakima County Horticultural Union has a capital stock of $1,000,000, divided into 100,000 shares of the par value of ten dollars each. It has approximately thirteen hundred stockholders, of which 525 are shipping members and the remainder are non-shipping members. Originally, the stock was sold to shipping members who signed agreements to deliver fruit to the corporation at the rate, formerly, of one share per acre. The shareholder, however, may sell his land and retain his shares of stock in the corporation. As a result of this, twenty-two per cent of the stock is now held by non-shippers and seventy-eight per cent by grower members. There are no restrictions in the by-laws respecting the persons who may acquire stock, nor is there any restriction as to the transferability of the stock after its acquisition. Shipper and non-shipper members are alike entitled to vote at the stockholders' meetings. Some individual non-shippers hold as many as two hundred shares of the capital stock of the corporation.

Dividends are paid on all stock, whether owned by shippers or non-shippers. In 1919, a dividend of twenty per cent was paid to the stockholders. Since that time, the dividend paid has been six per cent for all years except 1920, 1921 and 1934, when it was five per cent, and the year 1932, when no dividend was paid.

From time to time, the corporation has floated bond issues for construction of warehouses, of which the corporation has nine. Each shipper member enters into a marketing agreement with the corporation under which he is obligated to deliver his fruit to the corporation. Some grower members sort, wash and pack their own fruit, but in most cases the fruit is brought to the corporation's packing houses in loose boxes, and it is there washed, sorted, sized, packed, lidded, labeled and placed in cold storage until it is sold. All of this work is performed by the corporation.

The first charge made is six cents per bulk box for receiving, washing and removing the culls. The fruit is then graded, packed, wrapped and boxed, for which the charge in 1933 was twenty-two cents for each packed box. The corporation charges for placing the fruit in cold storage two cents a box for early varieties to four cents or more a box on the later varieties. The next charge is ten cents a box for handling and selling the fruit. There is a building fund charge of from one to four cents a box to meet the bond payments, for which stock is issued to the grower.

Each variety of apples is sold and placed in a separate pool. A record is kept of each grower's fruit as to variety, quality and grade, and when the returns from the pool are received, the grower is credited on his account with the corporation the amount of the sales price. At the beginning of the season, an arbitrary charge is set up for the services to be performed by the corporation. When the pools are closed, the actual cost of packing and handling is determined, and all money except that retained to pay the dividends on the stock is returned to the grower. There is an excess of charges over actual expenses each year. This excess is declared as a dividend to the stockholders.

The remainder is distributed to the growers on a crop basis.

█ Appellants contend that, irrespective of the views taken by this court in *Yakima Fruit Growers Ass'n v. Henneford,* 182 Wash. 437, 47 P. (2d) 831, in which we held that respondents were not subject to the occupational tax imposed by chapter 191, Laws of 1933, p. 869 (Rem. 1933 Sup. § 8326-1 [P. C. § 7068-31] *et seq.*), respondents are subject to the tax imposed under the provisions of Title II, chapter 180, Laws of 1935, p. 709 (Rem. 1935 Sup., § 8370-4 [P. C. § 7030-64] *et seq.*). In the case cited, the trial court held that respondents were exempt from the operation of the 1933 act. The judgment in that cause was entered November 23, 1934. Prior to our opinion in the case cited, the legislature enacted chapter 180, Laws of 1935, p. 706 (Rem. 1935 Sup., § 8370-1 [P. C. § 7030-61] *et seq.*), which appellants insist was enacted in the light of the foregoing decision for the purpose of making it certain that the activities of respondents, with certain specified exemptions, should be subject to taxation under that act.

The pertinent provisions of the 1935 act, together with references to the corresponding provisions of the 1933 statute, are as follows:

Section 4, chapter 180, Laws of 1935, p. 709 (Rem. 1935 Sup., § 8370-4 [P. C. § 7030-64]), provides:

"Sec. 4. From and after the first day of May, 1935, there is hereby levied and there shall be collected from every *person* a tax for the act or privilege of engaging in *business* activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of *sales,* or gross income of the *business,* as the case may be, as follows (Compare § 2, sub. 2, chapter 191, p. 871, Laws of 1933.) : . . .

"(c) Upon every *person* engaging within this state in the *business* of making sales at retail; as to such *persons,* the amount of tax with respect to such *busi-*

*ness* shall be equal to the gross proceeds of sales of the *business,* multiplied by the rate of one-quarter of one per cent. (Compare § 2, sub. 2 (d), chapter 191, p. 873, Laws of 1933.)

"(d) Upon every person engaging within this state in the *business* of making sales at wholesale; as to such *persons* the amount of tax with respect to such *business* shall be equal to the gross proceeds of sales of such *business* multiplied by the rate of one-quarter of one per cent. (Compare § 2, sub. 2 (c), chapter 191, p. 873, Laws of 1933.) . . .

"(e) Upon every *person* engaging within this state in any *business* activity other than or in addition to those enumerated in subsections (a), (b), (c) and (d) above; as to such *persons* the amount of tax on account of such activities shall be equal to the gross income of the *business* multiplied by the rate of one-half of one per cent. . . ." (Compare § 2-a, added to chapter 191, Laws of 1933, by chapter 57, § 1, p. 157, Laws Ex. Ses. 1933.) (Italics ours.)

Section 5, chapter 180, Laws of 1935, p. 711 (Rem. 1935 Sup., § 8370-5 [P. C. § 7030-65]), provides:

"Sec. 5. For the purpose of this title, unless otherwise required by the context: . . .

"(b) The word 'person' or word 'company,' herein used interchangeably, means any individual, . . . joint venture, . . . company, . . . corporation, . . . society, or any group of individuals acting as a unit, whether mutual, co-operative, fraternal, *non-profit* or otherwise; . . ." (Compare § 1, sub. 4, p. 869, chapter 191, Laws of 1933.) (Italics ours.)

In so far as respondents are concerned, the definition of the word "person" is the same in the two statutes, excepting the italicized word "non-profit," which was added to the definition in the 1935 statute. This clearly indicates that non-profit cooperative companies or associations were intended to be included in the word "person."

Further provisions of § 5, p. 711, of the 1935 act are as follows:

"(c) The word 'sale' means any transfer of the ownership of, or title to, property for a valuable consideration. . . . (Compare § 1, sub. (5), p. 869, chapter 191, Laws of 1933.)

"(d) The term 'sale at retail' or 'retail sale' means every sale of tangible personal property other than a sale to one who purchases for the purpose of resale in the regular course of business . . . (Compare § 2, sub. (2) (d), p. 873, chapter 191, Laws of 1933.)

"(e) The term 'sale at wholesale' or 'wholesale sale' means any sale of tangible personal property which is not a sale at retail; . . . (Compare § 1, sub. (9), chapter 191, p. 870, Laws of 1933.) . . .

"(m) The word 'business' includes all activities engaged in with the object of gain, benefit or advantage *to the taxpayer or to another person or class,* directly or indirectly; . . ." (Compare § 1, sub. (7), p. 870, chapter 191, Laws of 1933.) (Italics ours.)

In *Yakima Fruit Growers Ass'n v. Henneford,* 182 Wash. 437, 47 P. (2d) 831, we held that the determinative question was whether the respondents were engaged in business for the purpose of gain, benefit or advantage. Answering that question in the negative, we affirmed the judgment.

It is patent that the addition of the italicized words to the definition of the word "business" in sub. (m) of § 5, chapter 180, Laws of 1935, p. 711, had a purpose. Manifestly, it was the intention of the legislature not to exempt from the operation of the statute the activities of a corporation, cooperative or otherwise, simply because its members are stockholders and so manage its affairs that it was not permitted as a corporation to profit from its activities. Plainly, the respondents conduct their activities with the object of gain, benefit or advantage to their members or stockholders. The very purpose of the legislature, read in the light of the trial court's judgment in

*Yakima Fruit Growers Ass'n v. Henneford,* 182 Wash. 437, 47 P. (2d) 831, is obvious. The legislature intended, and so said, to amend the section to make it applicable to so-called non-profit cooperative associations and companies.

We recognized, in *Yakima Fruit Growers Ass'n v. Henneford,* 182 Wash. 437, 47 P. (2d) 831, the rule that an exemption in a statute imposing a tax must be strictly construed in favor of the application of the tax and against the person claiming the exemption.

Certain of respondents' operations are expressly exempted from the operation of the statute.

"Sec. 12. In computing tax there may be deducted from the measure of tax the following items: . . .

"(g) Amounts derived by any person as compensation for the receiving, washing, sorting and packing of fresh perishable horticultural products and the material and supplies used therein when performed for the person exempted in subsection (d) of section 11, this title, either, as agent or as independent contractor." Sub. (g), § 12, p. 720, chapter 180, Laws of 1935 (Rem. 1935 Sup., § 8370-12 [P. C. § 7030-72] sub. (g)).

Section 11, sub. (d), p. 718, chapter 180, Laws of 1935 (Rem. 1935 Sup., § 8370-11 [P. C. § 7030-71] sub. (d)), under which respondents claim exemption, reads, so far as pertinent to this appeal, as follows:

"Sec. 11. The provisions of this title shall not apply to: . . .

"(d) Any person in respect to the business of growing or cultivating for sale any agricultural or horticultural products, or crops, . . . *This exemption does not apply to any person selling such products at retail; . . . nor to any association of persons whatever, whether mutual, cooperative or otherwise, engaging in any business activity with respect to which tax liability is imposed under the provisions of this title; . . .*" (Italics ours.)

Respondents, and all others performing similar

services, are expressly exempted by § 12, p. 719 (Rem. 1935 Sup., § 8370-12 [P. C. § 7030-72]), from the operation of the 1935 statute as to amounts derived as compensation for "the receiving, washing, sorting and packing" of fruit which they handle and "the material and supplies used therein." However, § 12, p. 719, does not exempt respondents as to amounts received for warehousing, cold storage, or sale of the fruit.

The 1935 statute provides that there shall be collected from every person a tax for the act or privilege of engaging in "business" activities. "Business" includes all activities engaged in with the object of gain, benefit or advantage to the taxpayer or to another person or class, directly or indirectly. Included within the word "person" are groups of individuals and corporations, non-profit or otherwise, such as respondents. Under the provisions of Title II, chapter 180, Laws of 1935, p. 709, all are subject to the occupation tax unless exempted. Under the provisions of § 11, p. 717 (Rem. 1935 Sup., § 8370-11 [P. C. § 7030-71]), of the act, it is quite clear that the respondents are subject to the tax imposed as to their activities of warehousing, cold storage and sale of fruit. There could have been no other intent in the mind of the legislature in the addition of the amendatory language.

We agree with *The Attorney General* that, if the legislature did not intend to make certain that associations such as respondents are claimed to be were not to be exempted as to activities which would be taxable except for the provisions of § 11, p. 717, of the 1935 act, then the amendatory language was intended to have no effect whatsoever. It is a rule of statutory construction "that an act must be so construed that every part of it and every legislative ex-

pression be given effect, . . ." *Pease v. Stephens,*
173 Wash. 12, 21 P. (2d) 294. Respondents are sub-
ject to the tax imposed as to their activities of ware-
housing, cold storage and sale of fruit.

There is no merit in the contention of counsel for
respondents that the foregoing construction of the
statute is in violation of the constitutional rights of
respondents.

The judgment is reversed.

BLAKE, BEALS, TOLMAN, and STEINERT, JJ., concur.

MAIN, J. (dissenting)—Section 3 of chapter 57 of
the Laws of 1933, Ex. Ses., p. 159 (Rem. 1934 Sup.,
§ 8326-4 [P. C. § 7068-34]), provides that persons grow-
ing or cultivating for sale, profit or use any agricul-
tural or horticultural product or crop, shall be exempt
from the provisions of the act. In construing that
exemption in the case of *Yakima Fruit Growers Ass'n
v. Henneford,* 182 Wash. 437, 47 P. (2d) 831, it was
held that the association was not required to pay the
tax, as the corporate entity acted merely as the agent
of the growers who were members of the corporation.
It was there said:

"The fact that they operate through a corporate
entity in which they own the stock and the corporation
makes no profit and distributes the proceeds after a
sale and the payment of the expenses on a pro rata
per box basis, does not put them in a materially dif-
ferent situation than if two or more of them cooper-
ated simply as members of a joint undertaking with-
out corporate existence."

Section 11 of chapter 180 of the Laws of 1935, p.
717, provides that any person, in respect to the busi-
ness of growing or cultivating for sale any agricul-
tural or horticultural products or crops, shall not be
subject to the provisions of the act. There is the
further provision that the exemption does not apply

to any association of persons, whether mutual, co-operative or otherwise, engaging in any business activity with respect to which tax liability is imposed under the provisions of the act. This later provision in no way modifies the holding in the previous case, above referred to. There is nothing in the language indicating that, where growers associate themselves together, as was done by the Yakima Fruit Growers Association and others of like kind, and the association merely acts as the agent of the growers and members, and makes no profit, the association and its members would not be exempt from the provisions of the act.

In my opinion, the holding in the case now before us is out of harmony with the holding in the previous case. I therefore dissent.

MITCHELL, HOLCOMB, and GERAGHTY, JJ., concur with MAIN, J.