[No. 37405.    En Banc.    April 22, 1965.]

FIBREBOARD PAPER PRODUCTS CORPORATION, *Respondent,* v.
THE STATE OF WASHINGTON, *et al., Appellants.**

*The Attorney General, James A. Furber, Assistant,* and
*Timothy R. Malone, Special Assistant,* for appellants.

*Bogle, Bogle & Gates,* by *George Constable,* for respondent.

HALE, J.—This case arises from a claimed overpayment
of business and occupation taxes. It involves two causes of
action: (1) to recover $16,624 in taxes claimed overpaid
on manufacturing; and (2) to recover $85,393 assessed on
wholesaling. Refund of the tax on manufacturing is based
on a claim of double taxation, and on wholesaling because

*Reported in 401 P.2d 623.

the state refuses to allow an apportionment of the tax on that percentage of the selling activities which occur outside the state. From a judgment granting refund in full on both the manufacturing tax and the wholesaling tax, the state appeals.

First, on the manufacturing tax, Fibreboard Paper Products Corporation, a Delaware corporation with headquarters in California, manufactures and sells paperboard and paperboard products in Washington and elsewhere. It pays a tax on the manufacturing activity computed on the market value of paperboard produced at its Sumner and Port Angeles plants before the paperboard goes to its plant in Portland to be made into cartons for final shipment back to the customer in Washington. When the completed cartons, or cartons as ordered, are delivered to the customer in Washington, the state assesses a wholesaling tax. The Tax Commission thus claims a manufacturing tax on the value of the paperboard when it leaves the Sumner and Port Angeles plants en route to Portland as a manufactured product under RCW 82.04.120 and RCW 82.04.240 (one-quarter of 1 per cent) and a tax on wholesaling activity under RCW 82.04.270 measured by the wholesale value when the finished cartons are delivered to Washington customers.

Fibreboard urges that there can be no tax on the manufacturing of the paperboard because, in essence, it is but a step in the manufacture of the same product for final delivery to Washington customers, and that the wholesaling tax constitutes the sole taxing activity assessable under RCW 82.04.440, infra, the statute which, argues Fibreboard, prevents the tax on multiple activities assessed here. The problem in duplicative taxation comes into clearer relief if we look at a typical transaction.

A customer in Washington, for example, sends his order for ice cream cartons to Fibreboard's sales office in Seattle, which, in turn, forwards the order to its carton plant in Portland. The Portland plant makes up a manufacturing order and sends this to the company's plant in either Port Angeles or Sumner where paperboard is produced from

raw materials. The paperboard from which the order is to be filled is thus manufactured in Sumner and Port Angeles and a manufacturing tax is computed on its value. The paperboard is then shipped to Portland in sheets and rolls to be made into cartons.

At Portland, the paperboard goes through a number of processes—all paperboard being subjected to cutting, creasing and stripping, and substantial quantities of it being additionally subjected to printing, waxing, gluing and folding.[1] When the product, finished as ordered, is shipped to the Washington customer who originally placed the order with Fibreboard's Seattle sales office, the activity is then taxed as wholesaling under the business and occupation tax levied in RCW 82.04.270 (one-quarter of 1 per cent). The precise paperboard and the cartons made therefrom are identified throughout the whole process and may be readily traced to and connected with each order.

The trial court held that the tax on manufacturing, assessed under RCW 82.04.220 and RCW 82.04.240,[2] did not apply to the paperboard manufactured in Sumner and Port Angeles because the tax assessed in RCW 82.04.270[3] on wholesaling, when the cartons are delivered from Portland

---

[1] The following percentages of paperboard went through these processes: printing, 70%; cutting, creasing and stripping, 100%; waxing, 50%; and gluing and folding, 80%.

[2] "There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be." RCW 82.04.220.

"Upon every person . . . engaging within this state in business as a manufacturer; as to such persons the amount of the tax with respect to such business shall be equal to the value of the products . . . manufactured, multiplied by the rate of one-quarter of one percent.

"The measure of the tax is the value of the products . . . so manufactured regardless of the place of sale or the fact that deliveries may be made to points outside the state." RCW 82.04.240.

[3] "(1) Upon every person . . . engaging within this state in the business of making sales at wholesale; as to such persons the amount of tax with respect to such business shall be equal to the gross proceeds of sales of such business multiplied by the rate of one-quarter of one percent." RCW 82.04.270.

to Washington customers, constitutes multiple taxation under RCW 82.04.440. We think this ruling error.

Here are pertinent parts of the section under which the refund was ordered. RCW 82.04.440 states:

> Every person engaged in activities which are within the purview of the provisions of two or more of sections RCW 82.04.230 to 82.04.290, inclusive, shall be taxable under each paragraph applicable to the activities engaged in: *Provided,* That persons taxable under RCW . . . 82.04.270 [wholesaling] shall not be taxable under RCW . . . 82.04.240 [manufacturing] . . . with respect to . . . manufacturing *of the products so sold* . . . . (Italics ours.)

Key to an understanding of this section is the phrase *of the products so sold.*

The legislature apparently did not intend to exempt manufacturing of raw materials or intermediate ingredients from the manufacturing tax unless the manufactured product so produced is per se sold within the state, and the sale of the identical product at wholesale would thus be subject to the tax on wholesaling. If the product manufactured as here is not *so sold* in Washington but is sent outside the state where it is changed, it is not the manufactured product *so sold* and becomes instead a separately manufactured product subjecting its producers to the tax on the privilege of manufacturing. It is the activity of manufacturing, not the product, which gets taxed.

If Fibreboard had purchased the paperboard from another manufacturer and shipped it to Portland to be made up into cartons, the producing manufacturer would have paid a tax on the privilege of manufacturing it, and, in turn, any preceding manufacturer of a component would, likewise, be subject to the same tax. Only when the manufacturing moves from one process to another in a continuous line in this state under the same producer with each step leading directly to the ultimate wholesale user can it be said that the tax assessed on the privilege of wholesaling the product pre-empts the intervening taxes on manufacturing under

RCW 82.04.440. If it were otherwise, the legislature would not have limited the exemption to products *so sold.*

Accordingly, when the paperboard leaves respondent's plants in Sumner and Port Angeles for shipment to Portland where all of it will be cut, creased and stripped and most of it will be printed, glued and folded and at least half will be waxed, it is not the product *so sold* to the Washington customer. The product *so sold,* under RCW 82.04.440, and upon which the wholesaling tax is assessed, is the product originally ordered by the customer from Fibreboard's Seattle sales office.

In collecting the tax on manufacturing of paperboard and on the wholesaling activity of selling ice cream cartons or similar articles made in part therefrom, the state operates within the policy declared in *Crown Zellerbach Corp. v. State,* 45 Wn.2d 749, 278 P.2d 305 (1954), that taxation is the rule and exemption is the exception. Each tax is assessed not upon the product but upon the privilege of engaging in this state in an activity with respect to it. Since the paperboard made here is not the product *so sold* upon which the wholesaling tax will be imposed, manufacturing of paperboard here is a separate and distinct activity from the sale at wholesale of ice cream cartons made up and shipped to the purchaser from another state and, therefore, is a separately taxable activity. The claim on the first cause of action for refund of the manufacturing tax should, therefore, be dismissed.

In its second cause of action, respondent claimed and the trial court allowed refund of $85,393 for overpayment of taxes assessed under RCW 82.04.270, the wholesaling activity. Fibreboard showed, and the court found, that between September 1, 1952 through March 31, 1961, the company sold $85,596,703 of its products to Washington customers. Of this total in sales, $50,025,671 was attributable to sales activities exclusively within this state and, therefore, are not in issue. Our problem derives from the remaining sales of $35,571,032, which, though made to customers in Washington, come from what respondent calls sales activities taking place wholly or in part outside the state.

Fibreboard asserts an exemption from the wholesaling tax on the percentage of sales to customers in Washington commensurate with the amount of its selling activity which takes place outside the state. It shows that several customers in Washington are merely branch operations of customers having headquarters or major offices outside the state, and that it engages in selling activities with many of these offices. Thus, Fibreboard argues, where it performs selling activities outside of Washington in connection with the purchase of articles destined for ultimate delivery at wholesale to the same customer in Washington, the tax on the privilege of wholesaling here should, under RCW 82.04.270, be limited to the wholesaling activity occurring within this state and exclude that part of the selling activity taking place outside the state.

Respondent convinced the trial court that the process of selling at wholesale consists of five distinct steps or activities having a relative value toward the completed sale in percentage terms as follows:

|  | Per Cent |
|---|---|
| Primary solicitation & negotiation | 50 |
| Order taking | 12½ |
| Credit approval | 12½ |
| Sales service | 12½ |
| Payment received | 12½ |
|  | 100% |

It then showed by elaborate and detailed schedules pertaining to 31 specific customers that, of the $35,571,032 in sales involving substantial selling activities by the company outside the state affecting or leading to the consummated sales here, $21,630,262 was shipped from within the state and $13,940,770 was shipped in from outside the state. By computing in percentage terms the amount of selling activity taking place outside the state and applying this percentage to the wholesaling tax claimed by the state on the $35,571,032 in sales affected in part by Fibreboard's

actions outside the state, the trial judge found Fibreboard to be entitled to a refund in the sum of $85,393.

We do not think that the tax on wholesaling activity can be apportioned on the basis or in the manner recommended by respondent without doing violence to the clear intendment of the statutes by which the tax is assessed.

RCW 82.04.270 imposes the tax on wholesaling as follows:

(1) Upon every person except persons taxable under subsection (1) of RCW 82.04.260 engaging within this state in the business of making sales at wholesale; as to such persons the amount of tax with respect to such business shall be equal to the gross proceeds of sales of such business multiplied by the rate of one-quarter of one percent.

That sale of the finished or nearly finished cartons to Washington customers constitutes wholesaling may be seen from the statutory definition set forth in RCW 82.04.060:

"Sale at wholesale" or "wholesale sale" means any sale of tangible personal property which is not a sale at retail . . . .

Therefore, when Fibreboard receives orders at its Seattle sales office and ships to the customer paperboard products manufactured either wholly or in part here, and the articles ordered are delivered to the customer in Washington at wholesale—as distinguished from retail sale—the entire wholesaling activity for tax purposes under RCW 82.04.270 takes place in Washington. It is the situs of wholesaling, not the place of manufacture, that governs the tax on wholesaling.

The tax imposed here is a tax not on a thing but on an activity—a tax on the wholesaling activity within the state *measured by the gross proceeds from the activity*. Orders and payment from and delivery to a wholesale customer within the State of Washington constitute a completed wholesaling transaction within the state. If the entire taxable incident occurs in this state, the whole activity becomes taxable according to the statutory measure, without apportionment. Our statement in *General Motors Corp.*

*v. State,* 60 Wn.2d 862, 376 P.2d 843 (1962) seems to bear this out:

> where extensive business activity occurs within a state, taxation can only be avoided upon a showing that the activities are *disassociated from the sales in question.* Therefore, it is incumbent upon General Motors to make a showing of disassociation or, at a minimum, some degree of disassociation in order to remove from taxation that portion of sales not attributable to that activity. (Italics ours.)

and, further:

> The tax is imposed upon business activity within the state. The measure of the tax is the proceeds from the sales attributable to that activity.

Affirmed, *General Motors Corp. v Washington,* 377 U.S. 436, 12 L. Ed.2d 430, 84 Sup. Ct. 1564 (1964). The selling activities on which apportionment is claimed by Fibreboard here are not only not *disassociated from the sales in question,* but, indeed, lead directly to their consummation.

Our adherence to the rule that the revenue code of Washington does not warrant, nor the state and federal constitutions require, an apportionment or division in the measure of the business and occupation tax based on the percentage of business or occupational activities taking place outside the state if the entire taxable incident or activity occurs within the state may be seen in *Crown Zellerbach Corp. v. State,* 53 Wn.2d 813, 328 P.2d 884 (1958); *United States Steel Corp. v. State,* 51 Wn.2d 224, 316 P.2d 1099 (1957) (appeal dismissed, *United States Steel Corp. v. Washington,* 358 U.S. 46, 3 L. Ed.2d 44, 79 Sup. Ct. 40 (1958)); *B. F. Goodrich Co. v. State,* 38 Wn.2d 663, 231 P.2d 325 (1951) (*cert. denied, B. F. Goodrich Co. v. Washington,* 342 U.S. 876, 96 L.Ed. 659, 72 Sup. Ct. 167 (1951)).

The judgment is reversed on both causes of action.

ALL CONCUR.