[No. 37704.   Department Two.   December 30, 1965.]

LIPSETT STEEL PRODUCTS, INC., *Appellant,* v. KING COUNTY, *Respondent.*

LURIA BROTHERS & Co., INC., *Appellant,* v. KING COUNTY, *Respondent.**

*Franco & Bensussen,* by *Albert M. Franco* and *Harold B. Coe,* for appellants.

*Charles O. Carroll, James E. Kennedy,* and *William L. Paul, Jr.,* for respondent.

FINLEY, J.—Two cases were consolidated for trial in King County and on appeal here. The appellants are seeking to recover certain taxes paid under protest to King County. The opinion in the instant case, No. 37704, is dispositive of both appeals, and reference will be made herein only to appellant Lipsett Steel Products, Inc.

Under an agreement between appellant Lipsett and Bethlehem Steel Company the appellant (a) acquired the use of approximately 17½ acres of land owned by Bethlehem; (b) agreed to perform certain services involving the preparation of scrap steel for Bethlehem; and (c) purchased from

*Reported in 409 P.2d 475.

a German firm a huge Lindenmann scrap shear. This shear, which cost approximately half a million dollars and was capable of exerting a pressure of 880 tons, was installed on pilings and a reinforced concrete base which was 3 feet thick. Appellant erected a building and a craneway over and around the huge scrap shear.

In 1959, a deputy tax assessor for King County appraised the building which housed the scrap shear for the purpose of taxation. The shear and certain other items of property were not listed in the appraisal. The building was assessed by King County as real estate for the purpose of real taxes for the years 1960, 1961, and 1962. These taxes were paid by appellant Lipsett Steel Products, Inc. In February 1962, the King County Assessor effected a "delayed" or "omitted" assessment respecting the shear and other purported personal property of the appellant covering the years 1959, 1960, and 1961. The taxes, as mentioned hereinbefore, were paid under protest, and the instant litigation was instituted for recovery of the taxes paid.

The trial court agreed with appellant's contentions that the scrap shear was permanently affixed to the land and in legal contemplation should be regarded as real property. After concluding thusly, however, the trial court was convinced that the grounds stated by appellant in protesting payment of the tax to King County were technically inadequate to embrace the contentions of appellant in the instant litigation. Accordingly, judgment was entered dismissing the appellant's claim for refund of the taxes.

We agree with the end result reached by the trial court, i.e., dismissal of the litigation here involved, but for reasons different from those stated by the trial judge.

Appellant's grounds for protesting the assessment of taxes by King County were stated and called to the attention of the tax assessor in part as follows:

1. That there is no authority at law for a "delayed assessment" by a County Assessor and, therefore, the assessment is illegal and contrary to law.

While the reference in this ground of protest is to a "delayed" assessment rather than to an "omitted" assessment,

we think that either phrase, and certainly the remaining language of the protest, was adequate. It sufficiently apprised the assessor of the grounds involved. Lipsett was claiming the scrap shear was real property rather than personalty. In other words, there had been an improper "delayed" assessment of real estate tax, rather than a permissible "omission" or delayed assessment of *personal* property tax respecting the scrap shear and other related items of property.

Thus, the reasoning of the trial court was not apt when it characterized the appellant's grounds of protests as technically inadequate. The decision regarding inadequate grounds of protest in *Weyerhaeuser Timber Co. v. School Dist. No. 118 of Pac. Cy.*, 7 Wn.2d 683, 110 P.2d 872 (1941), is not controlling.

In passing, it can be said that the physical nature of the huge scrap shear—its immense size and weight, the physical aspects of its installation—could be quite misleading as to whether it is real or personal property. Consequently, it is understandable that the learned trial judge erred in concluding that the shear had become permanently affixed to the realty and should be regarded as real rather than personal property.

■ In any event, in ascertaining whether or not improvements to buildings or land have become, in legal contemplation, a part of the realty to which they are annexed, the intention of the parties is one of the dominant factors or determinants:

> "The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold." *Foreman v. Columbia Theater Co.*, 20 Wn.2d 685, 695, 148 P.2d 951 (1944).

The record in this case clearly indicates that Bethlehem, the lessor, held title to the land on which the scrap shear

was installed and paid real estate taxes thereon to King County. The lease unequivocally provides that the lessor's retention of title and ownership in the land did not effect a change in the title and ownership of the scrap shear and related equipment. Furthermore, the agreement specifically provides that, upon its termination, title to the shear could be acquired under a specified formula by Bethlehem, the lessor.

Despite great expense and difficulties, the shear could have been removed by appellant from its present location on the land of Bethlehem Steel Company, and this could yet be accomplished. The parties have explicitly contracted that no change in title or change in the characterization of the property shall take place because of the application of the principles of law generally relating to fixtures and the making of improvements or additions to real estate.

Hence, for the reasons indicated hereinbefore, our conclusion is that the property involved is personalty, and the "omitted" or "delayed" assessment of the personal property taxes by King County was proper under the provisions of RCW 84.40.080, reading as follows:

> Listing omitted property or improvements. The assessor, upon his own motion, or upon the application of any taxpayer, shall enter in the detail and assessment list of the current year any property shown to have been omitted from the assessment list of any preceding year, at the valuation of that year, or if not then valued, at such valuation as the assessor shall determine from the preceding year, and such valuation shall be stated in a separate line from the valuation of the current year. Where improvements have not been valued and assessed as a part of the real estate upon which the same may be located, as evidenced by the assessment rolls, they may be separately valued and assessed as omitted property under this section: . . . .

The judgment of the trial court dismissing the claims of the appellant taxpayers should be affirmed. It is so ordered.

ROSELLINI, C. J., WEAVER, J., and BARNETT, J. Pro Tem., concur.

HAMILTON, J., concurs in the result.