[No. 42173.    En Banc.    December 21, 1972.]

STAR IRON & STEELCOMPANY, *Respondent*, v. PIERCE COUNTY, *Petitioner*.

*Ronald L. Hendry, Prosecuting Attorney,* and *Leslie A. Wahlstrom, Special Deputy,* for petitioner.

*Murray, Scott, McGavick, Graves, Lane & Lowry, E. K. Murray,* and *L. B. McNerthney,* for respondent.

*Slade Gorton, Attorney General, Timothy R. Malone, Senior Assistant, Henry W. Wager, Assistant, William F. Lenihan* and *James C. Hanken* (of *Lenihan, Ivers, Jensen & McAteer*), *Harold F. Olsen, Graham H. Fernald,* and *Stan Pitkin, United States Attorney,* amici curiae.

PER CURIAM.—This is an action to recover ad valorem taxes on personal property. Three actions for recovery of taxes paid under protest for the years 1964 through 1969 were consolidated for trial and appeal. On appeal the Court of Appeals, Division Two, affirmed the judgment of the trial court in part and reversed it in part, thereby upholding plaintiff's claims for refund for the entire period under the particular circumstances. *Star Iron & Steel Co. v. Pierce County,* 5 Wn. App. 515, 488 P.2d 776 (1971). We granted review (80 Wn.2d 1004 (1972)) in order that this court might provide an ultimate determination of the issues of substantial public interest involved. *See* CAROA 50(b)(3)(i).

Having examined the record and considered the briefs and oral argument, we conclude that the rationale and result expressed by the Court of Appeals is correct. As it would be an unwarranted duplication serving no useful purpose to rewrite an already sufficient opinion, we adopt the opinion of Judge Pearson in *Star Iron & Steel Co. v. Pierce County, supra,* as the opinion of this court.

The cause is remanded to the trial court for further proceedings in accordance herewith.

HUNTER, J. (dissenting in part and concurring in part)— The majority has disregarded the plain language of RCW 84.40.020, which provides that "all personal property in this state subject to taxation shall be listed and assessed every year, *with reference to its value and ownership on the first day of January of the year in which it is assessed.*" It has instead rewritten the statute to read—shall be listed and assessed in reference to its value and ownership *as of the date it is valued by the assessor,* which in this instance was November 3, 1967 for the year of 1968, and August 27, 1968

for the year of 1969, *instead* of January 1st of the respective years as the statute expressly requires.

Ownership by the respondent in the personal property that had not passed to the United States government by progress payments on January 1st of the taxable years in question, should have been subject to the assessment.

I would affirm the trial court and reverse the Court of Appeals upon this issue, and would otherwise reverse the trial court and affirm the Court of Appeals.

HALE, J. (concurring in the dissent)—I concur in the dissent of Mr. Justice Hunter but believe that the subject invites further comment.

The trial court correctly concluded, I think, that property was properly assessed for the years 1968 and 1969, and I would affirm those two judgments. As to the taxes for 1964, 1965, 1966, and 1967, however, I would reverse.

Basing its opinion (5 Wn. App. 515, 488 P.2d 776 (1971)) largely on what it describes as "the county's own form [which] called for listings of the value of classes . . . rather than individual items," the Court of Appeals concluded—erroneously, I think—that the county, because it supplied the tax form, "cannot be heard to say that individual items were omitted from the list." 5 Wn. App. at 520. The ruling is thus made to depend to a large extent on the tax return as prepared by the taxpayer (*see* RCW 84.40.050, RCW 84.40.060)—a curious principle to be applied to the revenue laws, particularly when the county is obliged to apply, enforce and uphold the statutes on taxes and cannot lawfully alter them even if inclined to do so. On the facts as given in the opinion, I think that both the Court of Appeals and now this court are mistaken.

The courts seem to rely extensively upon the rationale of *Tradewell Stores, Inc. v. Snohomish County*, 69 Wn.2d 352, 418 P.2d 466 (1966), where, concerning improvements to land, an operative distinction was found in RCW 84.40.080 between property omitted and value omitted from the tax rolls. But whatever difference may be seen between omitted property and omitted value in that case has little valid-

ity, I think, in the instant case, so markedly different are the circumstances. In *Tradewell Stores,* the grocery firm had razed several houses upon its property and erected a modern supermarket. The assessor, however, continued to value the property on the basis of its former improvements, the houses. The assessor's office then attempted to revalue the property and change prior years' taxes, claiming that the new property, the supermarket, had been omitted from a real estate assessment.

That holding is inapposite to the present case in several very important respects. In *Tradewell,* the court specifically relied upon particular language in the statute as requiring the result reached. RCW 84.40.080, after requiring the assessor to enter in the current year's assessment list any property shown to have been omitted in a previous year, specifically limits that mandate where the taxable property is real estate and the omitted property is an improvement to real estate:

> Where *improvements* have not been valued and assessed as a part of the real estate upon which the same may be located, *as evidenced by the assessment rolls,* they may be separately valued and assessed as omitted property under this section: . . .

(Italics mine.) The statute is clear: it requires such evidence from the tax rolls only in the case of improvements to real estate. Here, there is no contention that the omitted property is affixed or attached to the real estate, and this court should not apply the statute or the *Tradewell* case to situations where their application is unwarranted.

The instant case deals with personal property and relates to a personal property tax imposed on manufacturers, refineries and rectifiers who carry on their pursuits for profit. Every manufacturer is required to list "as part of his manufacturer's stock the value of all engines and machinery of every description used or designed to be used" including tools and equipment used in the manufacturing, except property constituting fixtures to the real property. RCW 84.40.210. Pursuant to this statute, the Department of Reve-

nue has adopted an implementing regulation requiring a manufacturer to deliver to the assessor "a statement of personal property subject to tax" and which must include "*all* personal property, manufacturer's *stock*, engines and machinery," (italics mine) showing its cost, date of acquisition, and the place where the manufacturing is carried on. WAC 458-12-080. Both statute and regulation are obviously designed to tax the merchandise and stock of materials which the manufacturer or fabricator puts into his manufactured products.

Neither the personal property tax statute nor the regulation authorizes the county auditor or the taxpayer to alter the effect or the application of the tax because of the form on which the return is made or the manner in which the form is filled in and the tax return actually accomplished by the taxpayer.

The court's opinion, however, enables a manufacturer or rectifier to erect a tax shelter of his own devising in his own tax return if the ultimate product is intended for sale to the United States or a city or other municipality. The taxpayer, in the exercise of self-serving judgment in preparing its own tax return when dealing in governmental contracts, may virtually write its own ticket.

Under this court's present opinion, if the taxpayer, in executing a tax return form, lists any of the property of a taxable class, all of the property of that class must be deemed to have been declared and thus we have the semantics of omitted value versus omitted property determining whether the tax shall be collected. I would hold, to the contrary, that the mere lumping together of some items of a classification in a tax return does not operate to include items which the taxpayer himself actually did omit from his tax return—however earnestly he may have acted, and however plausible his reading of the tax statutes.

To include a general classification of property in the tax return should not under the statute operate to report particular items arguably of that class which the taxpayer actually did omit. Any other rule means that both taxpayer

and assessor may either willfully or unintentionally erect an estoppel against the state merely by designing, presenting or accepting a faulty or inadequate tax form—a power which does not and ought not rest in either of them.

It is a fundamental principle of taxation, I think, that where a tax is imposed, no assessor can relinquish it and where no tax is imposed an assessor cannot impose one. While the interpretation of a statute by an officer or agency charged with its enforcement might, in the case of an ambiguous statute, be an aid to its construction, there is no basis in law whatever for a ruling that the officer or agency may by its interpretation or its actions under the statute change that statute or alter its effect. *Pringle v. State,* 77 Wn.2d 569, 464 P.2d 425 (1970); *Pierce County v. State,* 66 Wn.2d 728, 404 P.2d 1002 (1965). Changes in the substance of the legislation must, of course, come through the legislature and the legislature alone. There is, therefore, little validity to the court's conclusion that, because the tax return form supplied by the county assessor did not call for information in sufficient detail, the property not assessed somehow is to be regarded as omitted value not subject to the tax.

The cases purporting to recognize a difference between omitted value and omitted property thus do no more than sustain an economical method of collecting taxes on personal property by requiring a taxpayer—as is the case with the federal income tax—to incur the major costs of reporting. A hand shovel and a diesel-powered earth mover, for example—assuming them arguendo to be taxable—are both earth-moving equipment, but to list the property classification of excavating equipment for tax purposes and omit the earth mover from that class, I am confident, would be an omission of the earth mover as property instead of a mere omission of its value.

In *Lipsett Steel Prods., Inc. v. King County,* 67 Wn.2d 650, 409 P.2d 475 (1965), an action to sustain the personal property tax on a giant scrap metal shear, installed on pilings embedded in a 3-foot reinforced concrete base, the

court made that very point. There a half-million dollar piece of equipment, omitted from the assessment roll, but contended by the taxpayer to be a part of the realty, was held by this court to be personal property not listed as personalty nor assessed as such. It was, though unlisted as personal property, and considered by the taxpayer as part of the real estate, nevertheless held taxable as omitted personal *property* not merely omitted *value*. There was in that case no indication that RCW 84.40.080 could be applied, as here, to defeat the county's proper claim for taxes.

The court's holding now does violence to *Lipsett*; under the rationale of the present case it would be compelled to rule that, had the company listed the classification of "machinery," the crane could have been classified simply as omitted value instead of omitted property and thereby escape taxation. Not only is such a result absurd, but it actually contravenes the constitution of the state which mandates a uniformity of taxes on all property of the same class. Const. art. 7, § 1 (amendment 14).

The legislature, in enacting RCW 84.40.210, which prescribes a method for reporting personal property by classification and value, did not intend to let omissions of specific items of a class escape taxation as omitted property. To hold otherwise, as earlier observed, flouts the clear intention of the tax statutes by making the omission, based on the taxpayer's own return, irretrievable. Accordingly, I would reject the assertion now approved by this court contained in the Court of Appeals opinion:

> Since the county's own form called for listings of the value of classes of personal property, rather than individual items of property, the county cannot be heard to say that individual items were omitted from the list. Their value was included as part of the value of the class of things to which they belong. Thus, according to *Tradewell*, these items cannot be considered *omitted property*. Rather, they constituted omitted value of property listed which cannot be reassessed.

5 Wn. App. 515, at 520. This property, therefore, actually

was and should be taxed as property omitted from the tax return by the taxpayer.

On another issue, the Court of Appeals noted the contract provided that title to the merchandise in the process of manufacture should be deemed to reside in the purchaser to the extent of payments received by the construction firm.[1] On that point, the court finds an immunity from taxation in saying in its opinion that:

> The constitution and statutes of this state are even more liberal in regard to immunity from taxation. The property of the federal government, the state, and municipal corporations is all exempt from property taxation by terms of article 7, section 1 of the Washington State Constitution. This provision is self-executing, but it has also been codified as RCW 84.36.010. Thus, there are two, independent bases for exemption as to the federal property and a state basis for exemption as to municipal corporations.

5 Wn. App. at 522.

The true rule for collecting taxes, I think, is quite to the

---

[1] The Court of Appeals illustrated that type of provision with the following examples (5 Wn. App. 515, 521):

"U. S. Engineers contracts provide:

" '[T]itle to all equipment, parts, articles and material and work in progress included in such estimates of work performed, shall forthwith rest in the Government.'

"The Navy contracts provide:

" '[A]ll material and work covered by progress payment made shall thereupon become the sole property of the Government.'

"And in the contract with the City of Seattle:

" '[A]ll material and work covered by partial payments shall thereupon become the sole property of the City of Seattle.'

"The International Terminal Operating Company, Inc. contract provides:

" 'The title to all materials, equipment, supplies, etc., and all other property assembled at the Contractor's plant or elsewhere for the purpose of being used for the construction of the Crane shall immediately be vested in the owner; provided, however, that nothing herein contained shall be construed as placing the risk of loss or damage upon the Owner or as a waiver by the Owner of its right to require the Contractor to replace, at Contractor's expense, unsatisfactory workmanship or materials and to deliver the completed Crane as herein provided.' "

contrary. Taxation is the rule; exemption the exception. Exemptions—or immunities—are to be strictly and narrowly construed. *Fibreboard Paper Prods. Corp. v. State,* 66 Wn.2d 87, 91, 401 P.2d 623 (1965). "[A]n exemption in a statute imposing a tax must be strictly construed in favor of the application of the tax and against the person claiming the exemption." *Yakima Fruit Growers Ass'n v. Henneford,* 187 Wash. 252, 258, 60 P.2d 62 (1936); *All-State Constr. Co. v. Gordon,* 70 Wn.2d 657, 665, 425 P.2d 16 (1967). Statutes exempting persons or property from taxation are given narrow scope, and exemptions are not to be extended by judicial construction to property other than that which is expressly designated by law. *Pacific Northwest Conference of Free Methodist Church of N. America v. Barlow,* 77 Wn.2d 487, 463 P.2d 626 (1969). Expressed otherwise, exemption from statutes must be strictly construed in favor of application of the tax and against the exemption. *Fors Farms, Inc. v. Washington State Employment Security Dep't,* 75 Wn.2d 383, 450 P.2d 973 (1969).

It is basic in our constitution that a state cannot lay a direct tax upon the property of the United States (*McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 429, 4 L. Ed. 579 (1819)), and vice versa; and if the property of the United States is temporarily in the hands of a private party, he cannot be taxed for its possession. *United States v. Allegheny County,* 322 U.S. 174, 88 L. Ed. 1209, 64 S. Ct. 908 (1944). The state constitution makes these principles explicit in declaring that property of the United States, the state of Washington, and municipal corporations are exempt from taxation. Const. art. 7, § 1. This provision does no more than state a commonsense principle that neither a municipality nor the state, for example, can tax post office buildings and equipment or the activity of operating the post office, and conversely the state cannot tax county public schools, courthouses, jails, city halls, and so on. But the court's opinion in the instant case will have the effect, I think, of establishing within the quite precisely defined areas of mutual governmental exemption created by the

constitution, a large, formless, irregularly-shaped tax shelter immunizing contractors, suppliers, manufacturers, shippers, wholesalers, and rectifiers engaged in the business of fabricating or manufacturing articles for or supplying or shipping them to either the United States, or the state, or to a county, city or other municipal corporation. It will be an immunity based not on true and beneficial ownership, but instead upon an empty title arising from provisions in a contract which are designed only to protect the government from the insolvency of the manufacturer, or the loss or damage to the articles during manufacture.

The tax now in issue, therefore, assessed as it is on all personal property according to its *value* and *ownership*, has little to do with concepts of title except where title and beneficial ownership are vested in the same, or a similar, entity. If the property is in fact owned by the United States or a municipal or state government, then no tax is payable. But if the property is owned by the taxpayer, even though the parties have contracted between themselves that paper title shall lie in the federal government, then this court should look through the agreement and behind the label agreed upon by the parties and examine the indicia and elements of ownership to determine for tax purposes who is the owner and owes the tax. This is particularly true here, where the legislature has provided a legitimate guide to constitutional interpretation in enacting that "[a]ll property belonging *exclusively* to the United States, the state, any county or municipal corporation, . . . shall be exempt from taxation." RCW 84.36.010. (Italics mine.) For this court to sustain a designation of title by the parties to the goods when its major if not sole purpose would be the determination of the incidence of or the exemption from taxation enables the parties themselves to decide whether the tax can be collected. It permits the parties to agree between themselves what shall be taxed and what shall be not taxed.

The legislature, I think, intended the tax to fall upon the elements of ownership, rather than the mere location of

paper title. The tax is assessed upon what, for want of a better term, may be described as beneficial ownership—those elements of true ownership arising from possession, use, enjoyment, and the right to alter, shape, transport and transfer. All of the economic benefits of ownership in this case remain in the taxpayer and the taxpayer retains these benefits until delivery and acceptance of the completed machinery. Thus the provisions in the various contracts made with the United States Government and municipal corporations that all materials and work covered by partial payments to the manufacturer as the job progresses become the sole property of the purchasing government are not designed to and should not in law operate to relieve the manufacturer of local taxes unless the naked title to the property carries with it the remaining elements of true ownership.

Nowhere in these contracts for the construction and sale of heavy duty cranes and hoisting equipment to the United States or the City of Seattle, for example, is there any indication that the materials and equipment being incorporated into and as a component part of the manufactured article shall be immune from local taxation; nor do taxpayers point to any acts of Congress or of the state declaring such an immunity. Nothing in the statutes, federal or state, can be found which brings these partly-completed giant cranes and hoists under the provision of the state constitution declaring that "[p]roperty of the United States and of the state, counties, school districts and other municipal corporations, . . . shall be exempt from taxation." Const. art. 7, § 1. The contracts do not employ the language of a tax statute, nor do they purport to, nor could they in any event, affect taxation. They thus have no bearing whatever on local taxes. The contract provision that title to the included materials and equipment may vest in the purchasing governmental entity as it is covered by the progress payments therefore does not purport to relieve the manufacturing taxpayer of either the benefits or the burdens of true ownership.

The obvious reason for having title pass by contract to the United States or a municipal corporation pro rata as the progress payments are made, as earlier noted, is to insure the governmental liens against the property in the event the manufacturer or rectifier becomes insolvent during manufacture or fabrication, or in the event that the property is lost or damaged by fire, theft, flood or from other causes. And the Uniform Commercial Code has substantially diminished the importance of title concerning those eventualities; for example, RCW 62A.2-401 provides that:

> Each provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies *irrespective of title* to the goods except where the provision refers to such title.

(Italics mine.) The code notes, too, in article 9 on security interests, at RCW 62A.9-202: *"Title to collateral immaterial. Each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor."* (Italics mine.)

Whatever financial claim the purchasing governmental entity may have against the manufacturer or vendor, the provision as to title merely gives it a first and prior claim against most others because it has been partly paid for. The manufacturer is not in the slightest degree relieved of a contractual duty to deliver the product on time, at the agreed price and quality according to the exact terms and specifications of the contract. All of the contracts make this clear with explicit provision that the contractor shall additionally be liable to the purchasing government for any damage or loss to the crane or hoisting equipment occurring during the performance of the work covered by the contract. The loss or damage clauses put the governmental interests in the articles for which it has already paid beyond claim or cavil—but other than this tenuous benefit, all of the indicia and benefits of ownership including posses-

sion, use and control remain in or upon the manufacturing taxpayer. So, too, should the burdens.

Under the contract—aside from the accrual of an empty title—all beneficial ownership remains in the taxpayer until delivery to and acceptance of the finished product by the purchasing government, whether federal, state or municipal. The taxpayer keeps exclusive possession of the raw materials—stores them, shapes them, fabricates them and transports them to the site of manufacture and finally he sells them to the buyer as merchandise under his contract for the manufacture of the completed machine.

During this entire interval, from the time of acquiring possession of the materials, articles, or equipment, the taxpayer receives all of the benefits of local government, supplied through the levy of ad valorem taxes. The property is protected by local police and sheriffs, as are taxpayer's personnel both on site and going to and from the site of manufacture. The local fire departments stand ready, by land and sea, to guard both the plant and the personal property from fire and explosion and to aid the taxpayer's personnel in medical emergencies. Children of the manufacturer's employees attend the public schools and may attend the state's colleges and universities at tax-supported tuition rates. The employee and his family can use the public libraries, and enjoy the public parks, zoos and playgrounds and swimming pools. They are protected by local inspection and enforcement services concerning pure food and drugs and local laws to insure honest weights and measures. These are but some of the more obvious uses to which the ad valorem taxes are put, and whose benefits extend to the articles and equipment now held immune from taxation.

Time enough to reach the result both curious and incongruous now achieved, when taxpayer can find an express declaration by the Congress or the state legislature exempting from state and local taxes all personal property destined to be ultimately incorporated into articles, merchan-

dise or equipment for final purchase and delivery to the United States or a municipal corporation.

Since the taxpayer, until final delivery, retains all of the elements of a beneficial possession and ownership, the property should be readily taxable in its hands in Tacoma to no greater or lesser extent than if an out-of-state finance corporation had a security interest in them equal to or in excess of their market value.

The statute says that all personal property shall be listed and assessed with reference to its value *and ownership* on the first day of January (RCW 84.40.020; *cf.* RCW 84.40.020 provisions relating only to the value of the real estate). Ownership here means lawful possession, possessory rights, and beneficial use and cannot sensibly be said to concern only naked title, security interests, mortgages and conditional sales and the like. Any other conclusion vitiates the clear intention of the legislature and opens the door to massive escapement of local taxation by means of out-of-state and foreign security transactions. The county assessor could not possibly follow the labyrinthine mazes of title and security to their place of final abode and litigate the issues of ownership and still collect the ad valorem tax on all assessable personal property found within his district. Neither can a statute be found that places such a bizarre duty upon him. All that the assessor is charged with doing is to determine prima facie who has the beneficial ownership of all taxable property within the district, for the statute leaves it to the claimants to negotiate or litigate among themselves their respective rights in the taxed property.

In addition, without explicitly saying so, the court seems to be extending a rule of governmental tax immunity to private persons and corporations who are engaged in contracts to build, fabricate, supply and perform work for the federal, county or city governments. The so-called delegated sovereignty which puts a private corporation on the same level as the government of the United States or the City of Seattle, finds no support whatever in the language

of either constitution—and at best amounts to no more than a judicial invention fashioned by the courts to achieve a particular result. In a not so long distant past, this idea has been identified as a component of fascism. I would not extend this so-called delegated sovereignty to private corporations beyond the bare necessity of the situation—and tax immunity is not such a necessity—to enable the government to get the government's work done. Expanding the doctrine of delegated sovereignty will, I think, tend to further in this country a form of corporate fascism in which the government of the United States and the cities by contract clothe private contracting parties with the immunities and powers of government—a consequence which I find inimical to constitutional government and repugnant, if not to its explicit clauses and phrases, to the entire spirit of the constitution which vests the executive, legislative and judicial powers only in prescribed governmental entities.

This court passed upon this very issue several times and declined to extend the sovereign immunity of the United States to private corporations contracting with it. In *Moses Lake Homes v. State*, 48 Wn.2d 499, 294 P.2d 1113 (1956), we held that a federal licensee did not escape the sales tax on its purchases. There, a contractor engaged in the construction of military housing on military reservations owned and controlled by the United States, did not escape the sales tax imposed on their materials even though after acceptance of the buildings all stock in the initial construction companies would eventually be turned over to the government. How the theory of sovereign governmental immunity can sensibly be extended to materials in private hands on private property escapes me.

In *Dravo Corp. v. Tacoma*, 80 Wn.2d 590, 496 P.2d 504 (1972), we impliedly rejected any ideas of municipal immunity arising from notions of delegated sovereignty in ruling that a contractor which had built a hydroelectric dam for the city, far from its corporate limits, was required to pay the city excise tax imposed upon construction contracts performed within the city. In essence we held, *inter*

*alia*, that the municipality's immunity from taxation did not extend to the parties with whom it contracted.

Finally, the conclusion that ownership for tax purposes is determined as of the date the assessment is made flies in the face of the statute applying the tax. RCW 84.40.020 reads:

> All real property in this state subject to taxation shall be listed and assessed every year, with reference to its *value* on the first day of January of the year in which it is assessed. All personal property in this state subject to taxation shall be listed and assessed every year, with reference to its *value and ownership* on the first day of January of the year in which it is assessed: . . .

(Italics mine.)

Unquestionably, here the legislature has defined different rules for real and personal property, and has specifically required that personal property be taxed with reference to—based upon—its *ownership* on January 1 of the assessment year. This provision is absent with reference to real property. It seems to me that there could be no clearer way to say that personal property sold to an exempt body on January 2 would remain taxable during that year to its nonexempt owner of the previous day. The consistency of this provision with the law with reference to real estate, while perhaps desirable, is prohibited by the language of the statute. Similarly, the availability of the property itself to satisfy the tax would not seem to be necessary in order to place upon its owner on tax day the obligation of payment of the tax. *P.B. Inv. Co. v. King County*, 78 Wn.2d 81, 469 P.2d 893 (1970), thus states the correct rule that the exempt status of real property may be governed by its ownership as of the date of assessment. But because of the directly contrary statutory language concerning the taxation of personal property, and the specific mandate that ownership on January 1 govern taxability, I would refuse to apply the rule in real estate matters to the incidence of personal property taxes.

Accordingly, I think that the taxes sought to be imposed here are all payable and collectible.

HAMILTON, C.J., and HUNTER, J., concur with HALE, J.