[No. 15534. *En Banc.* June 29, 1920.]

SLOAN SHIPYARDS CORPORATION, *Appellant,* v. THURSTON COUNTY *et al., Respondents.*[1]

TAXATION (18)—ASSESSMENT—OWNERSHIP OF PROPERTY—CONTRACT—CONSTRUCTION. Materials assembled by and under the control of a shipbuilding company, listing the same as the owner, must be considered as its property for the purpose of taxation, notwithstanding a contract between it and the Emergency Fleet Corporation, which provided that the latter should, as between the parties, be considered the owner of materials ordered or assembled in the yard, "to the extent of the payments made thereon," in the absence of evidence of payments on the particular material assembled; and the Fleet Corporation is not shown to be the owner by evidence that the shipbuilding company had earned but $2,170,700 on its contract and that the Fleet Corporation had advanced $3,144,700 thereon, under a contract calling for only partial payments as the work progressed.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered May 28, 1919, upon findings in favor of the defendant, dismissing an action to cancel a tax, tried to the court. Affirmed.

*Frank C. Owings,* for appellant.

*Thos. L. O'Leary* and *W. W. Manier,* for respondents.

MOUNT, J.—This action was brought to cancel a tax levied against the property of the plaintiff. The complaint alleges that the property assessed to the plaintiff was not its property and that it did not own the property on the first day of March, 1918, the date fixed

[1]Reported in 190 Pac. 1015.

by law when the property was required to be assessed. Upon issues joined, the case was tried to the court without a jury. The court found that the property was the property of the plaintiff, and for that reason dismissed the action. The plaintiff has appealed.

There is no dispute upon the facts, which may be briefly stated as follows: The appellant is a corporation owning a shipbuilding yard and plant in the city of Olympia. On the 11th day of March, 1918, the assistant treasurer of the appellant made a detailed list of the personal property of the appellant for the purpose of assessment, as follows:

| Items of Property | No. | Assessed Value |
|---|---|---|
| Donkey and logging engines, pile drivers, hoisting engines, etc. | 7 | $30,000.00 |
| Lumber (M feet) | .. | 100,000.00 |
| Manufacturers' materials and manufactured articles, including brick, stone, building materials, etc. | .. | 225,000.00 |
| Manufacturers' tools, implements, and machinery, including engines and boilers and donkeys | .. | 220,000.00 |
| Total | | $575,000.00 |

This list was returned to the assessor of Thurston county and the assessor accepted the figures as the true value of the property, and fixed the value of this property for taxation purposes for the year 1918 at the sum of $287,500, the same being fifty per cent of the true value, which method prevailed in assessing all other property in Thurston county. The total tax levied for all purposes for that year was 59.63 mills. The tax levied against the property of the appellant was $17,143.63. After the assessment, no complaint was made to the county commissioners or the board of equalization. Thereafter the levy was made and the county of Thurston distributed the taxes to the state, the city and the school district, as required by law. Thereafter the appellant made a tender to the treas-

urer of Thurston county of the sum of $7,453.75, claiming that this was the amount of tax it owed upon the property which it owned. The treasurer refused to receive this amount in full payment, and this action was brought to set aside all of the tax levied, except the sum of $7,453.75, which was tendered to the county and the tender made good.

It was the duty of the appellant, upon the trial of the case, to show that it did not own the property which was assessed against it. It was admitted upon the trial, and is admitted here, that the appellant was the owner of the first and fourth items in the detailed list furnished by the appellant to the county assessor, but that it was not the owner of the second and third items therein on the first of March, 1918, because at that time these items were owned by the United States Shipping Board Emergency Fleet Corporation, and that the property of that corporation was not subject to taxation. In order to show this fact, the appellant offered in evidence a contract entered into between the appellant company and the United States Shipping Board Emergency Fleet Corporation (hereinafter referred to as the Emergency Fleet Corporation), which contract provided for the construction of sixteen wooden ships by the appellant for the Emergency Fleet Corporation. This contract provided, among other things, for the payment for these vessels as follows: (1) That eleven per cent, or $53,900, should be paid on each ship within thirty days after signing the contract, upon production of a sworn statement that the contractor had theretofore expended or was committed on material contracts for expenditures on the work under the contract in an amount equal to such payment; (2) that eleven per cent, or $53,900, should be paid on each ship within sixty days after signing

the contract, upon production of a like sworn statement; (3) that thirteen per cent, or $63,700, should be paid when the keel of each ship was laid and half in frame; (4) that thirteen per cent, or $63,700, should be paid when all in frame, and the keelsons of each ship in; (5) that thirteen per cent, or $63,700, should be paid when the ship was three-fourths sealed, bottoms and bilges planked; (6) that thirteen per cent, or $63,700, should be paid when cabin work was one-third completed; (7) that thirteen per cent, or $63,700, should be paid when engines were ready for shipment from constructor; and (8) that thirteen per cent, or $63,700, should be paid upon acceptance of the ship after sea trial. Paragraph VI of this contract provided as follows:

"It is agreed that as the payments provided therein are made by the owner (Emergency Fleet Corporation) on account of materials ordered by or assembled or set up in the yard of the contractor (appellant) or used in the construction thereunder, the same to the extent of the payments made shall become the property of the owner."

It was shown upon the trial that, prior to March 1, 1918, the Emergency Fleet Corporation had advanced to the appellant the sum of $3,144,800, and that the appellant had earned up to that time $2,170,700. It is argued on these facts that the Emergency Fleet Corporation was the owner of the lumber and manufacturers' material, amounting to $325,000, listed by the assessor as the property of the appellant. We think this falls far short of proving that the Emergency Fleet Corporation at that time was the owner of these particular materials. The provision of section VI of the contract, above quoted, is to the effect that the Emergency Fleet Corporation shall be, as between

the parties to the contract, the owner of materials ordered or assembled or set up in the yard of the contractor *to the extent of the payments made thereon.* On the first of March, 1918, when the assessment was required to be made, the appellant was in possession of the ship yards and had control thereof and had possession of all the personal property therein situated. Provision VI of the contract between the appellant and the Emergency Fleet Corporation simply gave the Emergency Fleet Corporation a lien upon the materials in the yard to the extent of the payments made upon those particular materials.. The extent of those payments was not shown, but even if shown, as between the appellant and all the world besides the Emergency Fleet Corporation, the appellant owned all the property in its possession.

The rule in regard to the ownership of property for the purpose of taxation is stated in 37 Cyc. at page 788, as follows:

"Ordinarily and in the absence of statute to the contrary, property is taxable only to the person who is the owner thereof at the date for its listing or assessment, or the date fixed by statute as of which its ownership for purposes of taxation is to be determined; and taxes are not a lawful charge on property unless assessed in the name of its owner, and any attempt to enforce the payment of taxes assessed and charged to the wrong person will be ineffective. This does not mean that the person assessed must have a perfect and unencumbered title to the property, but only that he should be vested with the apparent legal title, or with the possession coupled with such claims and evidences of ownership as will justify the assumption that he is the owner; and assessors are not required to go behind the records and search out unrecorded transfers or anticipate the judicial settlement of a title which is in litigation."

See, also, 26 R. C. L. § 315.

We think this must necessarily be the correct rule. It follows, therefore, that since the appellant was in possession of this property, claiming to be the owner and being the actual owner as to everybody except the Emergency Fleet Corporation, and representing to the assessor that it was the owner, and having the apparent legal title coupled with possession, is sufficient evidence of ownership in the appellant. We are satisfied, therefore, that the trial court properly found that the appellant, for the purpose of assessment, was the owner of the property on the first·day of March, 1918. and is therefore liable for the whole tax.

Both appellant and respondent in their briefs have devoted considerable space to an argument upon the question of estoppel. Since we have concluded that the property in question was, for the purposes of taxation, the property of the appellant on the first day of March, 1918, it is unnecessary to consider the question of estoppel.

The judgment appealed from is therefore affirmed.

ALL CONCUR.