[Nos. 364-41540-2; 365-41541-2;   Division Two.   August 11, 1971.]
366-41559-2.

STAR IRON & STEEL COMPANY, *Appellant*, v. PIERCE COUNTY, *Respondent*.

STAR IRON & STEEL COMPANY, *Respondent*, v. PIERCE COUNTY, *Appellant*.

516

*Murray, Scott, McGavick, Graves, Lane & Lowry, E. K. Murray,* and *L. B. McNerthney,* for Star Iron & Steel Company.

*Ronald L. Hendry, Prosecuting Attorney,* and *Leslie A. Wahlstrom, Special Deputy,* for Pierce County.

*Harold F. Olsen, Graham H. Fernald, Stan Pitkin, United States Attorney,* and *Albert E. Stephan, Assistant,* amici curiae.

PEARSON, J.—In several consolidated actions, taxpayer, Star Iron and Steel Company, seeks to recover ad valorem personal property taxes paid under protest during the years 1968 and 1969. On these cases, the trial court ruled in favor of the county and the taxpayer appeals. A companion case, involving additional issues, covers other sums paid under protest in relation to the years 1964, 1965, 1966 and 1967. On that case, the trial court held in favor of the taxpayer and Pierce County appeals. The issues in all cases relate generally to the scope of exemptions from personal property taxation, the breadth of such taxation, and the scope of the assessor's authority to tax property or value omitted from earlier tax returns. For convenience, the appeals will be considered in two parts, one relating to the

1964 through 1967 taxes, and the other relating to 1968 and 1969 taxes. The following are general facts relevant to all taxable years.

Star Iron and Steel Company is a manufacturer of custom-engineered, heavy-duty cranes and hoisting equipment. Much of its production is sold to the United States and other public bodies for use in dams, navigation projects and the like. Virtually all the company's products are custom-built for specific jobs and are sold in interstate or international commerce.

Many of the contracts under which Star does business contain provisions requiring progress payments during the construction and installation of machinery. Payment is to be made under these contracts when progress estimates are submitted and approved. Upon payment, title vests in the purchaser to all items of work and material included in the progress estimates. Other contracts call for passage of title immediately upon assembly of materials. (*See* footnote 3, *infra.*)

Star Iron and Steel maintained an account called "Work in Progress." This account recorded the value of materials used on various contracts during any given year, broken down by individual contract. Since it was intended to show the total cost of the various jobs, other cost items were also included. Items included in overhead were put into this account, as well as an adjusted percentage of the costs of management and other services. Consequently, the account contained many items that were not taxable as personal property of the taxpayer. We will now undertake a more specific consideration of the 1964-1967 taxes in which Pierce County is the appellant.

### Validity of the 1964-1967 Reassessments

In 1967, the Pierce County Assessor undertook to audit the books and records of Star Iron and Steel Company. This audit revealed that Star had reported to the assessor only *net* values for the inventory of *materials and manufacturer's products in the hands of manufacturer.* That is,

before reporting values to the assessor, Star had made certain deductions relating to progress payments and transfer of title to non-taxable bodies. Acting on this information, the assessor undertook to list and assess the value of the personal property deducted during the 4 years in question. As the basis for the reassessment, the assessor used Star's work in progress account.

During these same years, the assessor used a reporting form, prescribed by the state, pursuant to RCW 84.08.020, which called for a listing by the taxpayer, by value, of four classes of personal property: (1) office furniture and equipment; (2) manufacturer's machinery and equipment; (3) merchandise-stock-in-trade; and (4) *manufacturer's products and material in hands of manufacturer*. The form provided only for reporting of values. There was no provision in the form for any detailed listing of items or breakdown of values.

The issue raised on the appeal by the assignments of error of Pierce County from this portion of the case is whether the assessor attempted to assess *property omitted* from the tax rolls for the years in question, as is permitted under RCW 84.40.080 or whether he was attempting to assess *value omitted* from the tax rolls for those years. We conclude as did the trial court, that the assessor attempted to do the latter, which he is not permitted to do.

■ The assessor attempted to proceed ·under RCW 84.40.080[1] to list and assess property omitted from the as-

---

[1]This section reads: "The assessor, upon his own motion, or upon the application of any taxpayer, shall enter in the detail and assessment list of the current year any property shown to have been omitted from the assessment list of any preceding year, at the valuation of that year, or if not then valued, at such valuation as the assessor shall determine from the preceding year, and such valuation shall be stated in a separate line from the valuation of the current year. Where improvements have not been valued and assessed as a part of the real estate upon which the same may be located, as evidenced by the assessment rolls, they may be separately valued and assessed as omitted property under this section: *Provided,* That no such assessment shall be made for any period more than three years preceding the year in which such improvements are valued and as-

sessment in previous years. This he cannot do in the instant case, because no property was, in fact, omitted from the assessment in the years in question. The form the assessor used during these years called for the value of various general types of personal property held by the taxpayer. Those classes of property include the same property here in controversy. That is, the assessor has attempted to reassess *manufacturer's product in the hands of manufacturer*. A value for this class of personalty was reported each year in controversy. That value may or may not be large enough— that question in part must wait until the second part of this opinion for resolution—but never was the class of property omitted from assessment. This case is closely analogous to that of *Tradewell Stores, Inc. v. Snohomish County,* 69 Wn.2d 352, 418 P.2d 466 (1966). In that case, Tradewell acquired several single family residences, then destroyed them and replaced them with a considerably more valuable supermarket. Through an error in the assessor's office, the improvements on the land continued to be carried on the assessment rolls at the value of the houses, rather than at the increased value of the supermarket. When the county attempted to go back and pick up the value of the new building, the Supreme Court held that such reassessment was not within the statute, since the assessor was not listing and valuing property omitted from the tax rolls, but rather was attempting to reassess omitted value of listed property. In order to tax omitted property, the court stated, the assessment roll must clearly show the failure to tax. Here, the assessment roll shows the opposite. Values were assigned in the tax returns for each of the years in question to all the classes of property which were later sought to be

---

sessed: *Provided, further,* That no such assessment shall be made in any case where a bona fide purchaser, encumbrancer, or contract buyer has acquired any interest in said property prior to the time such improvements are assessed. When such an omitted assessment is made, the taxes levied thereon may be paid within one year of the due date of the taxes for the year in which the assessment is made without penalty or interest."

reassessed. These values are to be found on the tax rolls for those years.

Since the county's own form called for listings of the value of classes of personal property, rather than individual items of property, the county cannot be heard to say that individual items were omitted from the list. Their value was included as part of the value of the class of things to which they belong. Thus, according to *Tradewell,* these items cannot be considered *omitted property.* Rather, they constituted omitted value of property listed which cannot be reassessed. *Hammond Lumber Co. v. Cowlitz County,* 84 Wash. 462, 147 P. 19 (1915); *E. K. Wood Lumber Co. v. Whatcom County,* 5 Wn.2d 63, 104 P.2d 752 (1940); *Tradewell Stores, Inc. v. Snohomish County, supra;* Washington Administrative Code 458-12-100.

As the court noted in *Tradewell,* the assessor is at liberty to demand greater detail in the listing of property. He may challenge the value submitted and may audit the accounts of the taxpayer, as was ultimately done here. If this result places a burden upon the assessor, he thus has means to lessen this burden. Because he did not do so, we think that the desirable finality of assessments and the established law preclude the assessor's reassessing omitted value, once the taxing process has come to a close for the year in question. To hold otherwise would be to introduce but another uncertainty into an already uncertain area. The trial court's determination that the sums paid under protest for 1964, 1965, 1966 and 1967 should be refunded is correct and will be affirmed.[2]

VALIDITY OF TAXATION FOR 1968 AND 1969

(Appeals of Star Iron and Steel Company)

Several additional issues are raised with regard to the taxes levied in 1968 and 1969. However, what we say about these questions will also apply to the years 1964 through 1967. The contracts involved in these earlier years were the

[2]Discussion of various statutes which may have borne on this question but do not change the result we have reached may be found at footnote 6, *infra.*

same or similar to those used in 1968 and 1969. Thus, the reasons given for the 1968 and 1969 decision also support the result we have reached above.

In order to fully consider the issues relating to 1968 and 1969 taxes, we must set out some facts, which are largely undisputed. Most of the challenged taxes relate to contracts with the United States. Provision for passage of title upon payment of progress billings was made in these contracts.[3] Some of these payments were made prior to the statutory assessment date (January 1 of the preceding year for 1968 and 1969). Other progress payments were made between the statutory assessment date and the date upon which the assessor valued the property. These actual valuation dates were November 3, 1967 for taxes payable in 1968 and August 27, 1968 for taxes payable in 1969. Though title to the disputed property had passed to the United States, some of it remained in possession of Star, so that necessary work could be completed.

Other disputed taxes were levied on property, title to

---

[3]These contract clauses are representative of those covering work in dispute:

U. S. Engineers contracts provide:

[T]itle to all equipment, parts, articles and material and work in progress included in such estimates of work performed, shall forthwith rest in the Government.

The navy contracts provide:

[A]ll material and work covered by progress payment made shall thereupon become the sole property of the Government.

And in the contract with the City of Seattle:

[A]ll material and work covered by partial payments shall thereupon become the sole property of the City of Seattle.

The International Terminal Operating Company, Inc. contract provides:

The title to all materials, equipment, supplies, etc., and all other property assembled at the Contractor's plant or elsewhere for the purpose of being used for the construction of the Crane shall immediately be vested in the owner; provided, however, that nothing herein contained shall be construed as placing the risk of loss or damage upon the Owner or as a waiver by the Owner of its right to require the Contractor to replace, at Contractor's expense, unsatisfactory workmanship or materials and to deliver the completed Crane as herein provided.

which had passed to the City of Seattle—property shipped out of Pierce County prior to November 3, 1967. A similar dispute involves property which was purchased from a subcontractor outside Pierce County and was never brought into Pierce County. The final disputed tax was levied on property which was in Star's plant, but by contract was owned by another private corporation, the International Terminal Operating Company. In this latter case, passage of title had occurred, but the goods remained in Pierce County on the valuation day for 1969 (August 27, 1968).

Several issues are raised by these facts. First, there is the scope of governmental tax immunity and the problem of *when* such immunity attaches. The next problem is what type of property interests are taxable under the Washington statute. Connected with this question is that of who has the burden of determining the state of title to personal property for tax purposes. Finally, there is the question of the circumstances under which improperly levied taxes may be recovered. We will consider these issues in the order in which we have stated them.

Among the oldest and most firmly anchored propositions of constitutional law is that the property of the federal government is immune from direct taxation by a state or any of its subdivisions. *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819). This immunity applies to property of the United States in the hands of contractors. *United States v. Allegheny County,* 322 U.S. 174, 88 L. Ed. 1209, 64 S. Ct. 908 (1944). Thus, Pierce County could not directly tax the property of the United States in the possession of the plaintiff.

The constitution and statutes of this state are even more liberal in regard to immunity from taxation. The property of the federal government, the state, and municipal corporations is all exempt from property taxation by terms of article 7, section 1 of the Washington State Constitution. This provision is self-executing, but it has also been codified as RCW 84.36.010. Thus, there are two, independent

bases for exemption as to the federal property and a state basis for exemption as to municipal corporations.

We must next determine what property, for purposes of the disputed taxes, is the property of the United States. To do this, it is necessary to decide what date, under the statute, will be used as a reference point to determine the exempt status of the property. That is, must property be exempt on the assessment day (January 1 of the year preceding the tax year) or is it exempt if transferred to an exempt owner before it is valued by the assessor? (Valuation was done November 3, 1967 for 1968 and August 27, 1968 for 1969 in this case.)

■ We hold that property is exempt from ad valorem property taxation in any year where title to it has passed to a tax-exempt entity before the date upon which the assessor values and assesses such property. This is the law as to real property. *P. B. Investment Co. v. King County,* 78 Wn.2d 81, 469 P.2d 893 (1970). No cogent reason is advanced why the same construction of RCW 84.40.020 that applies to real property should not also apply to personal property.[4] The statutory language is identical as it applies

---

[4]This section reads:

All real property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of January of the year in which it is assessed. *All personal property in this state subject to taxation shall be listed and assessed every year, with reference to its value and ownership on the first day of January of the year in which it is assessed: Provided,* That if the stock of goods, wares, merchandise or material, whether in a raw or finished state or in process of manufacture, owned or held by any taxpayer on January 1 of any year does not fairly represent the average stock carried by such taxpayer, the county assessor shall list and assess such stock upon the basis of the monthly average of stock owned or held by such taxpayer during the preceding calendar year or during such portion thereof as the taxpayer was engaged in business.

(Italics ours.)

As amended July 1, 1967, this statute reads:

All real property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of January of the year in which it is assessed. All personal property in this state subject to taxation shall be listed and assessed every

to real and personal property. The lien for such taxes attaches at the time the property is listed and assessed. *Air Base Housing, Inc. v. Spokane County*, 56 Wn.2d 642, 354 P.2d 903 (1960). Consistency would be served by having one date govern the immunity of both types of property.

Personal property will not thereby escape legitimate taxation as the county contends. A statutory process exists for taxing the average monthly inventory of a taxpayer if the amount of property held in January is not a fair representation of the average inventory. RCW 84.40.020; Washington Tax Reporter ¶20-381. A rush to exempt property just before the assessment date can be avoided by use of this device. Even mobile personal property must remain for a time in one place to be manufactured and progress must be made before progress billing can be made. We note that the Department of Revenue has provided regulations under which the assessor may proceed to use this method. *See e.g.* WAC 458-12-330. So long as a true and fair valuation results, we think that this method is a proper and feasible one. *Northern Commercial Co. v. King County*, 63 Wn.2d 639, 388 P.2d 546 (1964).

■ ■ This determination has the result of making effective the tax-exempt status of all the property to which the United States took title prior to the assessment and listing days in November and August. Whether it has the same effect as to plaintiff turns on whether or not the Washington statutes provide for taxation of interests in

year, with reference to its value and ownership on the first day of January of the year in which it is assessed: *Provided,* That if the stock of goods, wares, merchandise or material, whether in a raw or finished state or in process of manufacture owned or held by any taxpayer on January 1 of any year does not fairly represent the average stock carried by such taxpayer, such stock shall be listed and assessed upon the basis of the monthly average of stock owned or held by such taxpayer during the preceding calendar year or during such portion thereof as the taxpayer was engaged in business.

As can be seen, this statute contains identical requirements as to both real and personal property. We think that the construction given the statute ought to be consistent as to both classes of property.

personal property of less than full ownership. In other words, does the statute permit taxation of *possession* of the type plaintiff exercised, where legal title is in a tax-exempt body? We think that such taxation is not permitted by our statutes, even though it has been held to be constitutionally permissible under the United States Constitution. *Detroit v. Murray Corp. of America*, 355 U.S. 489, 2 L. Ed. 2d 441, 78 S. Ct. 458 (1958). Several reasons exist to support this result.

First, the words of RCW 84.40.020 support the contention that *ownership* and not *possession* is taxable. Personal property is to be listed and assessed each year with reference both to its "value" and its "ownership." This statutory language should have some effect. The general rule is that unambiguous statutes are to be construed so as to give effect to every word. *Mincks v. Everett*, 4 Wn. App. 68, 480 P.2d 230 (1971).

A comparison with the analogous provision relating to real property is also instructive. Under RCW 84.04.090 real property is defined to include the land itself and all rights and privileges appertaining thereto. Rights such as leaseholds (*e.g.*, RCW 84.04.090 and WAC 458-12-240) are taxable interests in real property. *See generally Pier 67, Inc. v. King County*, 78 Wn.2d 48, 469 P.2d 902 (1970). Analogous taxes on lesser interests in personal property are not present.

The county contends that adoption of this rule as to personal property is contrary to that reached in *Sloan Shipyards Corp. v. Thurston County*, 111 Wash. 361, 190 P. 1015 (1920). In that case, the taxpayer submitted a listing of its personal property which included certain building materials. Based on this listing, which was accepted by the assessor, the assessment and levy were made without protest. Only when the tax bill was sent did the taxpayer object and assert that an agency of the federal government was, in fact, the owner of the property in dispute. The court stated that rather than ownership of the disputed property, the federal agency had at best a lien upon it to

the extent of payments made to the shipyard. The proof did not disclose the extent of this lien. Property is taxable to the owner, the court ruled. Though this ownership need not be unencumbered and perfect—possession together with apparent legal title may suffice—it must be present, for taxes levied against a person other than the owner of property cannot be effectively assessed and charged. The *Sloan* case thus supports the position we have taken. It would be inconsistent, we think, only had the *Sloan* court allowed taxation of a partially finished ship, the title to which had clearly passed to the United States. This the *Sloan* court did not do.

■ Still another reason for the result we reach on this question is the nature of the right under which plaintiff held the disputed property. Even assuming, arguendo, that possessory interests in personal property are taxable, the interest held by plaintiff does not reach the dignity of taxability. Under its contracts with the United States, plaintiff could do nothing with property to which the United States had taken title, except to complete construction of it. Hypothecation of this right was forbidden—it could not be sold, given away, leased or otherwise disposed of without the government's right following the property. Plaintiff held not property, but a usufructuary right to complete fabrication for the benefit of the owner (the federal government) and not for the benefit of the holder of the right (plaintiff) other than its entitlement to receive full payment upon completion of the work. These concepts are well discussed in *Douglas Aircraft Co. v. Byram,* 57 Cal. App. 2d 311, 134 P.2d 15 (1943). The right held by plaintiff is, we think, not sufficient to be taxable. Were we to hold with the county's contention, every bailee of personal property would be subject to taxation on the bailed property he held. We do not think that result is within the legislative intent in passing the statutes discussed above. We refuse to accept a possible construction of a statute that will lead to a gross injustice or an absurd result. *Wilson v. Lund,* 74 Wn.2d 945, 447 P.2d 718 (1968).

Our resolution of this case leads us into a problem that may be broadly characterized as who, between the assessor and the taxpayer, has the burden of showing the true state of title to personal property. The trial court's memorandum opinion suggests that it felt that the taxpayer had not properly demonstrated to the assessor that the disputed property was tax exempt. The county has raised a similar argument before this court. Thus, we must consider whether, though possession is not a taxable interest in personal property, unexplained or unsatisfactorily explained possession is taxable.

In analyzing this problem, we begin by considering what reporting is required of a taxpayer with regard to personal property. RCW 84.40.020 requires that all personal property within this state *subject to taxation* shall be listed and assessed every year. RCW 84.40.210[5] at least in part, refers to amounts of property, *subject to tax*. It seems to us that these statutes require the listing only of property *subject to taxation* which is being held by the taxpayer. This view is strengthened when we examine the regulation of the Department of Revenue, as set out in WAC 458-12-080,[6] and its predecessor. These rules require the taxpayer

---

[5]This section reads: "Every person who purchases, receives or holds personal property of any description for the purpose of adding to the value thereof by any process of manufacturing, refining, rectifying, or by the combination of different materials with the view of making gain or profit by so doing shall be held to be a manufacturer, and he shall, when required to, make and deliver to the assessor a statement of the amount of his other personal property subject to taxes, also include in his statement the value of all articles purchased, received or otherwise held for the purpose of being used in whole or in part in any process or processes of manufacturing, combining, rectifying or refining. Every person owning a manufacturing establishment of any kind and every manufacturer shall list as part of his manufacturer's stock the value of all engines and machinery of every description used or designed to be used in any process of refining or manufacturing except such fixtures as have been considered as part of any parcel of real property, including all tools and implements of every kind, used or designed to be used for the first aforesaid purpose."

[6]The listing requirements of this rule read: "A manufacturer shall make and deliver to the assessor a statement of personal property sub-

to list his *taxable* personal property. We think that here the taxpayer adequately did this.[7] The contracts covering the disputed property show that title to the disputed property was in the United States, since the assessor knew the dates of progress payments and could determine that on those dates title was transferred. Since, as we have shown above, mere possession is not taxable, we think that upon a showing that title was in one other than the possessor, the possessor in the position of plaintiff here has shown that he ought to be exempted from taxation for such property. He has, as to himself, established the exempt status of the

---

ject to tax. The statement shall include the manufacturer's stock, engines and machinery, and other personal property.

"All personal property, manufacturer's stock, and engines and machinery, together with its acquisition cost and date of acquisition, shall be listed in said statement.

"The personal property pertaining to the business of a manufacturer shall be listed in the town or place where his business is carried on.

"On receipt of the manufacturer's statement, the assessor shall delete from the assessment the value of any engines and machinery that have been listed and assessed as part of any parcel of real property. A copy of the corrected assessment shall be returned to the manufacturer."

[7] By the time of the 1968 and 1969 tax returns, the taxpayer and the county were apparently in controversy. The forms for those years contain appended listings of property claimed to be exempt and the bases for these exemptions. We think that these listings were not necessary and the lack of them was not fatal as to the 1964-1967 taxes. RCW 84.40.050, which was repealed by the 1967 legislature during the 1968 assessment procedure (Laws of 1967, Ex. Ses., ch. 149, § 62) directs the tax commission to provide the assessors with forms suitable for listing personal property. A statutory predecessor of this statute was once held to be directory. *Western Electric Co. v. Norway Pac. Constr. & Dry Dock Co.*, 126 Wash. 204, 217 P. 1021 (1923). Our view that only taxable property need be listed is strengthened by a reading of RCW 84.40.190. This statute requires a delivery to the assessor of a listing of personal property owned or held in various capacities where that property is required to be listed for taxation. This statute was also amended in 1967, but the Department of Revenue regulations issued pursuant to the amended act still require a listing of taxable property. WAC 458-12-060; WAC 458-12-065 and WAC 458-12-080. RCW 84.08.080 allows such interpretations of the code and here we are inclined to follow them, since we think they correctly state the law that only taxable property need be listed.

personal property. *See* RCW 84.36.005. In listing all property but that so exempted as to himself, we think the taxpayer has met the requirements of RCW 84.40.210. The elements of apparent ownership for taxation set out in *Sloan Shipyards Corp. v. Thurston County,* 111 Wash. 361, 190 P. 1015 (1920) have not been met here.[8]

■ We next consider the property of Seattle which was shipped from the county prior to the assessment day and the property of Star which was never in Pierce County. The property of Seattle is exempt because, as discussed above, title to it passed to an exempt body before the date on which the assessor listed and assessed this property. It, and the other property of Star not in the county, is also exempt because it was not in the county on the assessment day. It is axiomatic that the county generally may tax only personal property within the county. *See* RCW 84.44.010. Taxpayer never stated that these goods were within the county and indeed, pursuant to RCW 84.68.020, protested the assessment on such grounds, among others. We think that property not within the county cannot be brought into the county by the assessor's error and so made taxable. Even *G. P. Halferty & Co. v. King County,* 30 Wn.2d 561, 192 P.2d 736 (1948), which is concerned with another statute, involves a situation in which the taxpayer erroneously reported property to be within the county when, in fact, it had been shipped elsewhere. Here no such error was made or erroneous report given to the assessor.

We next consider the property owned by International Terminal Operating Company (a nonexempt entity), which was in the possession of Star. The contract between

---

[8]*Columbia River Door Co. v. Cowlitz County,* 125 Wash. 603, 216 P. 875 (1923) does not require a different result, even if it is assumed that the reasoning therein applies to the presently effective statutes. That case, which was limited, at least in part, by *Turner v. Spokane County,* 150 Wash. 524, 273 P. 959 (1929), only states that it is presumed property is assessed to its true owner when the assessor lacks any knowledge to the contrary. This presumption has been rebutted here, we think, by evidence showing the extent of the assessor's knowledge of plaintiff's operations and contracts.

these parties makes clear that title is in International Terminal. Possession such as plaintiff exercised is not taxable, as we have shown. Thus, only International Terminal could properly be assessed as to this property. *See Phillips v. Thurston County*, 35 Wash. 187, 76 P. 993 (1904).

■ This leaves the final question of what part, if any, of the improperly assessed taxes the plaintiff should recover. Pierce County argues that constructive fraud must be shown in order for taxes to be refunded as to the property either not in the county or not owned by plaintiff. *See Dexter Horton Bldg. Co. v. King County*, 10 Wn.2d 186, 116 P.2d 507 (1941). We think that all of the taxes paid under protest here should be recovered by the taxpayer. It is agreed that taxes levied against a tax-exempt body are void and payment of them must be refunded. RCW 84.68.020. *See generally Puget Sound Power & Light Co. v. State*, 70 Wn.2d 493, 424 P.2d 634 (1967). *See Puget Realty Co. v. King County*, 50 Wash. 349, 97 P. 226 (1908); *Phillips v. Thurston County, supra*. Any tax levied on property not owned by the taxpayer but owned by another taxable entity seems to us to be constructively fraudulent per se, as to the plaintiff taxpayer. *Puget Realty Co. v. King County, supra*.

The judgments on the appeals by Star Iron and Steel Company are reversed and remanded for entry of judgments allowing refunds for taxes paid under protest for 1968 and 1969.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied October 6, 1971.

Review granted by Supreme Court January 26, 1972.