[No. 43875.   En Banc.   April 22, 1976.]

TIMBER TRADERS, INC., *Petitioner*, v. KEN JOHNSTON, ET AL, *Respondents*.

*Quigley, Hatch, Loveridge & Leslie*, by *Lawrence B. Bailey*, for petitioner.

*Ronald D. Hendry, Prosecuting Attorney*, and *Michael B. Hansen, Deputy*, for respondents.

ROSELLINI, J.—The Court of Appeals, Division Two, reversed a summary judgment permanently enjoining the assessment and collection of certain ad valorem property taxes on standing timber. (*Timber Traders, Inc. v. Johnston*, 13 Wn. App. 607, 536 P.2d 655 (1975).) We granted the taxpayer's petition for review which asked the court to reconsider its decision in *Star Iron & Steel Co. v. Pierce County*, 81 Wn.2d 680, 504 P.2d 770 (1972), insofar as it approved and adopted the holding of the Court of Appeals, Division Two, that under RCW 84.40.020, the exempt status

of personal property must be determined as of the date the assessor values the property.

In *Star Iron & Steel Co. v. Pierce County*, 5 Wn. App. 515, 488 P.2d 776 (1971) (adopted by this court in a per curiam opinion—three justices dissenting), title to equipment in the possession of the taxpayer had passed to various exempt entities, for whom it was being manufactured, after January 1 of the assessment year but before the date of actual valuation. Here, the taxpayer (the petitioner in this court) purchased property from the State after January 1, but before the date the assessor valued it. Thus, ostensibly, the interpretation which worked to the taxing authority's disadvantage in *Star Iron & Steel Co.* should work to its advantage here. Nevertheless, the county prosecutor joins the petitioner in earnestly contending that the appellate courts of this state were mistaken in their interpretation of the statute and that, whereas the legislature had intended that all personal property be taxed with reference to the same date, the courts have substituted a floating tax day, determined fortuitously by the assessor's work load and the order in which the assessment lists are considered. The statute provides in pertinent part:

> All real property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of January of the year in which it is assessed. . . . All personal property in this state subject to taxation shall be listed and assessed every year, with reference to its value and ownership on the first day of January of the year in which it is assessed: *Provided,* That if the stock of goods, wares, merchandise or material, whether in a raw or finished state or in process of manufacture, owned or held by any taxpayer on January 1 of any year does not fairly represent the average stock carried by such taxpayer, such stock shall be listed and assessed upon the basis of the monthly average of stock owned or held by such taxpayer during the preceding calendar year or during such portion thereof as the taxpayer was engaged in business.

RCW 84.40.020.

.

The statute should be read in conjunction with RCW 84.36.005, which provides:

All property now existing, or that is hereafter created or brought into this state, shall be subject to assessment and taxation for state, county, and other taxing district purposes, upon equalized valuations thereof, fixed with · reference thereto on the first day of January at twelve o'clock meridian in each year, excepting such as is exempted from taxation by law.

■ The opinion in *Star Iron & Steel Co. v. Pierce County, supra,* first noted that in *P.B. Inv. Co. v. King County,* 78 Wn.2d 81, 469 P.2d 893 (1970), this court held that the exempt status of real property is to be determined as of the date it is actually valued and assessed. Reading the statutory language with respect to real and personal property as identical, both courts saw no reason why the personal property provision should not be construed the same as the real property provision.

In this we were in error. While the provisions with respect to real and personal property are the same as regards valuation, both requiring that the property be valued as of January 1, the provision with respect to personal property has an additional feature. It requires that the property be listed and assessed with reference to its *ownership* on January 1. While this distinction was pointed out in the dissenting opinions written by Justices Hunter and Hale, the latter being also signed by Justice Hamilton, it nevertheless escaped the attention of the majority of this court.

We now deem ourselves compelled to reexamine the statute in the context of other related statutes, to determine if there is any reason why the words "with reference to its . . . ownership on the first day of January" should not be taken to mean that the exempt status should be determined as of that day.

Further evidence that the legislature intended the property to be taxed with reference to its ownership on the 1st of January is found within the provision itself. It is provided that if the stocks, wares, etc., held on that date are not fairly representative of the average stock carried by the

owner, an average shall be substituted. In other words, an owner whose stock of goods is less or more than his average stock, shall list it as though he held on January 1 the amount which he generally has in stock.

Looking at the exemption provisions, we find that they consistently refer to January 1 as the date upon which taxability is determined. For example, RCW 84.36.150 requires the listing, as of January 1, of certain food products, which are exempt if shipped out of the state before April 30. If they are actually shipped, the assessment is cancelled, provided the assessor is notified by June 1 of the assessment year. RCW 84.36.300 exempts a portion of the stock of goods held on January 1 by any taxpayer. RCW 84.36.470, providing a phaseout exemption for animals, birds, insects, and agricultural crops, changes the assessment levels as of January 1 each year.

RCW 84.36.800 *et seq.* provides the procedure for establishing the exempt status of property. While there is no express provision that exemptions are to be determined with reference to ownership or use on January 1, it is clear that exemptions are allowed with reference to the assessment year. *See, e.g.,* RCW 84.36.825, referring to applications made for the "assessment year 1974," and RCW 84.36.830, directing the Department of Revenue to review each application for exemption and make a determination prior to August 1 of the assessment year. In further harmony is RCW 84.36.855, providing that property which changes from exempt to taxable status shall be placed on the assessment roll for taxes due and payable in the following year.

Reading the exemption provisions as a whole and in conjunction with the language used in RCW 84.40.020, we cannot escape the conclusion that the legislature intended that the exempt status of property should be determined as of January 1. If the property changes status during the year, its new status will be noticed on the following January 1.

In *Puget Sound Power & Light Co. v. Cowlitz County,* 38 Wn.2d 907, 234 P.2d 506 (1951), this court held that there

can be no valid personal property tax until there has been a levy specifying the amount thereof, Judges Finley and Mallery dissenting. The case was overruled in *Air Base Housing, Inc. v. Spokane County,* 56 Wn.2d 642, 354 P.2d 903 (1960), thus denoting later approval of the views expressed in the dissent.

In the course of the argument advanced in the dissent in *Puget Sound Power & Light Co. v. Cowlitz County, supra* at 919, Justice Finley explored the legislative intent with respect to the date upon which the obligation to pay a personal property tax arises. RCW 84.40.020's predecessor at that time provided:

> "For the purpose of taxation all real and personal property in the state shall be listed and assessed with reference to its value and ownership on the first day of January at 12 o'clock meridian in the year in which it is assessed." Rem. Rev. Stat. (Sup.) § 11112-1 [P.P.C. § 979-61].

That chapter was amended in Laws of 1961, ch. 15, § 84.40.020, to provide that real property should be listed and assessed with respect to its value on January 1 only, while personal property should be listed and assessed with respect to its value and ownership. The legislature thus manifested an intent that the two types of property should be treated differently.

The discussion by Justice Finley in his dissenting opinion is particularly applicable to the present language of the section dealing with the taxation of personal property. Finding ourselves unable to improve upon the analysis contained in that dissent, we set it forth here and adopt it as a part of this opinion. Referring to the statutory language quoted above, the opinion reads:

> Such provisions are by no means uncommon among the statutes of the several states. They are uniformly construed to mean that taxes shall be charged to the individual owning the property assessed on the tax day. See *Wangler Bro's v. Black Hawk County,* 56 Iowa 384, 9 N. W. 314; *Blossom v. Van Court,* 34 Mo. 390; *Wildberger v. Shaw,* 84 Miss. 442, 36 So. 539. The language of *County of*

*Martin v. Drake*, 40 Minn. 137, 139, 41 N. W. 942, is typical. There the court stated:

"All tax laws have to fix upon some particular date in the year at which to determine the taxability as well as the ownership and value of property, for purposes of assessment and taxation. Our revenue laws have fixed this at the 1st of May. . . . Personal property is assessed and taxed with regard to both its value and ownership at that date. . . . Every man must pay taxes on what he then owns, and at its then value, no matter how short a time he may have owned it, or how soon thereafter it is lost. All property, if in being as taxable property at that date, is liable to taxation for that year at its then value, although it may only have come into being the day before, and may be in whole or in part destroyed the day after."

With respect to real property, a rule that it must be assessed with reference to its ownership on a particular day has no practical significance. In the state of Washington, the only way in which [unpaid] taxes on realty may be collected is by the assertion of a lien on the land itself. Rem. Supp. 1943, § 11265 [P.P.C. § 979-493] [now RCW 84.60.020]. The lien follows the land, and if the owner on the tax day chooses subsequently to sell or otherwise dispose of his property, there is no way in which he may personally be held responsible at the time of levy. In the usual situation, at least, the taxing authority is in no degree hampered by this limitation. Real property is not transitory. Its attributes or characteristics are not greatly subject to change. Ordinarily, it may be readily identified and reached in satisfaction of the tax due.

But this is not necessarily true as to personalty. It often may be transferred out of the taxing jurisdiction, or destroyed, or concealed, or so commingled with other goods as to be unrecognizable. If the only remedy of the taxing authority were to assert a lien on the property assessed, it is apparent that there would be many situations where, because of the occurrence of one or more of the above events, it would be impossible ever to collect the tax due. For this reason, three remedies have been made available to the taxing authority in the event of nonpayment of taxes on personal property: First, as with realty, enforcement of a statutory lien on the specific items of property charged; second, enforcement of a statutory lien on other personal property owned by the same

taxpayer; and third, enforcement of a statutory lien on his real property [RCW 84.60.020].

It will be seen that the two latter of these remedies involve proceedings against the owner of the personal property taxed, regardless of the fact that he may no longer be the owner at the time the proceedings are brought. To make such remedies effectual, it is necessary to establish a particular time when ownership of personal property, for tax purposes, is determined. Our legislature has specifically fixed January 1st as the pertinent date, irrespective of the date of levy. After January 1st, the owner may ship his property to Alaska; he may burn it; he may sell it to a tax-exempt public utility district; but he still remains liable for payment of the tax due on it. That is the necessary implication of the cases cited above, and the only reasonable interpretation of the words of our statutes.

Thus, in a very real sense, taxes on personal property remain the "personal obligation" of the owner of that property. The numerous Washington cases cited in the majority opinion have not erred in so stating.[1] While the "personal obligation" label or concept may not precisely describe the situation in the sense that no action will lie to enforce the obligation, and the remedy of the taxing authority is strictly limited to the procedures set forth in the statutes, such considerations should not be material here. "A distinction is to be drawn," says Judge Cooley, "between taxes which are personal obligations of the owner although he may not be sued therefor, and taxes which are not personal obligations of the owner for which he may not be sued." 3 Cooley, Taxation (4th ed.) 2624, § 1327. As a source, this author cites *Midland Guaranty & Trust Co. v. Douglas County,* 217 Fed. 358, 362, where the court stated:

"It thus appears, while each piece of real estate is

---

[1]*Spokane County v. Annis,* 43 Wash. 655, 86 P. 1066 (1906); *Porter v. County of Yakima,* 77 Wash. 299, 137 P. 466 (1914); *Scandinavian American Bank v. King County,* 92 Wash. 650, 159 P. 786 (1916); *Raymond v. King County,* 117 Wash. 343, 201 P. 455 (1921); *Wilberg v. Yakima County,* 132 Wash. 219, 231 P. 931 (1925), 41 A.L.R. 184 (1926); *Fowler v. Snohomish County,* 149 Wash. 530, 271 P. 587 (1928); *Lahn & Simons v. Matzen Woolen Mills,* 149 Wash. 538, 271 P. 830 (1928); *Mogan v. Larson,* 183 Wash. 287, 48 P.2d 621 (1935); *Libby, McNeill & Libby v. Ivarson,* 19 Wn.2d 723, 144 P.2d 258 (1943); and *Palace Fish & Oyster Co. v. Bean,* 32 Wn.2d 56, 200 P.2d 753 (1948).

liable only for the taxes upon it, and the owner thereof is not personally liable therefor, the personal taxes become a personal obligation of the owner, but do not subject the owner ordinarily to a suit, not because he is not liable, but because, the law having provided adequate means for their collection, that remedy is exclusive."

Actually, taxes are assessed against the owners of property, although it is common practice to speak of them as being assessed against the property itself. Gray, Limitations of Taxing Power and Public Indebtedness 582, § 1172. As Cooley expresses it, the *individual and not the property* pays the tax. 1 Cooley, Taxation (4th ed.) 93, § 24. When this is kept in mind, it will be seen that the constitutional provision exempting public property from taxation simply has nothing to do with a situation where the property in question—whatever its subsequent history—was privately owned on the tax day, and where the statute provides other remedies against the delinquent taxpayer than resort to the specific property assessed.

*Puget Sound Power & Light Co. v. Cowlitz County, supra* at 919-22 (Finley, J., dissenting).

Finding the clearly expressed intent of RCW 84.40.020 to be that owners shall be liable only for taxes levied upon taxable personal property which they hold on January 1 of the assessment year, unless the stock of goods then held does not fairly represent the average of such stock carried by the taxpayer, an intent which is in harmony with the legislative purposes and with other provisions of the tax statutes, we are compelled to admit our error in *Star Iron & Steel Co. v. Pierce County*, 81 Wn.2d 680, 504 P.2d 770 (1972). To the extent that we adopted the rationale and holding of the Court of Appeals, Division Two, upon this question, the case is hereby overruled.

The decision of the Court of Appeals, Division Two, is reversed (*Timber Traders, Inc. v. Johnston*, 13 Wn. App. 607, 536 P.2d 655 (1975)), and the judgment of the Superior Court is reinstated.

STAFFORD, C.J., and HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.