**In re Brad M. CUNNINGHAM and Robert McNannay, as Personal Representative of the Estate of Cheryl Keeton Cunningham, Debtors.**

**Bankruptcy No. 83–01723.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Jan. 19, 1994.

**594**

David Utevsky, Foster Pepper & Shefelman, Seattle, WA, for debtor.

Timothy W. Dore, Ryan Swanson & Cleveland, Seattle, WA, for trustee.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Chief Judge.

This matter is before the Court on the trustee's motion to determine claims against surplus funds from a tax foreclosure sale of property of the estate.

## BACKGROUND

In December of 1992, the Yakima County Treasurer conducted a tax foreclosure sale of real property of the estate, commonly known as "Tampico Lot 2". The County proceeded with the sale without having obtained relief from stay, nor had it given notice of the sale to the trustee. Robert McNannay, Personal Representative of the Estate of Cheryl Keeton Cunningham, moved to have the sale declared void as violative of the automative stay. In response, the trustee requested that the Court annul the stay and validate the sale, so long as the County turn over to her the $32,000 surplus received from the sale. The trustee prevailed and is currently holding the funds, subject to the rights of third parties asserting claims thereto.

Debtor Brad Cunningham argues that he is entitled to $25,000 of the surplus, since it represents proceeds from the sale of homestead property. The trustee contends that the foreclosure sale eliminated all encumbrances, including the debtor's homestead exemption.

## ISSUES and DISCUSSION

■ 1. *Under Washington law, is the homestead exempt from the foreclosure of a County's lien for delinquent real property taxes?* The trustee contends as a general matter that the homestead is not exempt from a foreclosure sale to satisfy a lien for real property taxes. This is a state law issue of first impression. The trustee's arguments are twofold. First, she asserts that the refund and minimum bid procedures contained in the tax foreclosure statute are inconsistent with the protections afforded by the homestead statute. Second, she contends that the homestead statute should be construed so as to exclude *in rem* obligations.

A. *Do the refund and minimum bid procedures contained in the tax lien foreclosure statute supersede the protections afforded by the homestead statute?* The trustee notes that RCW 84.64.080 requires that any surplus from a tax foreclosure sale be "refunded following payment of all water and sewer district liens ... to the record owner of the property. The record owner of the property is the person who held title on the date of issuance of the certificate of delinquency." Since Tampico Lot 2 was property of the estate when the certificate of delinquency was issued in August of 1992, the trustee claims to be the record owner and hence entitled to the surplus. Next, the trustee relies on the fact that the minimum bid at a tax foreclosure sale is limited by RCW 84.64.080 to the total amount of taxes, interest, penalties, and costs, while RCW 6.13.160 requires that a bid for the purchase of homestead property exceed the amount of the homestead exemption.

The Washington Court of Appeals addressed an analogous situation in *City of Algona v. Sharp*, 30 Wash.App. 837, 638 P.2d 627 (1982). That case involved the foreclosure of a local improvement district assessment lien for the installation of sewers. Under Washington law, an assessment lien is a statutory lien superior to any other encumbrance, except a lien for general taxes. RCW 35.50.260 contains the procedures for foreclosing assessment liens. The statute describes the hearing and notice requirements and then states: "In all other respects the procedures for sale shall be conducted in the same manner as property tax sales described in RCW 84.64.080." RCW 35.50.260.

In spite of the conflict between the homestead and assessment lien statutes, the Court held that RCW 35.50 does not "supersede the homestead statute as to assessment liens."

30 Wash.App. at 843, 638 P.2d 627. The Court noted that the issue before it "places two important governmental objectives in opposition: (1) the homestead statute ... and (2) the interest of the government in ensuring the collection of unpaid local assessments...." *Id.* at 841, 638 P.2d 627. The Court treated the issue as one of statutory construction, noting:

> The legislature has listed several types of liens which may be executed against a homestead. RCW 6.12.100. "Assessment liens" are not among them. The maxim "expressio unius est exclusio alterius" is the law in Washington, barring a clearly contrary legislative intent.

*Id.* at 842, 638 P.2d 627.

> In a footnote, the Court in *Algona v. Sharp* stated: We express no opinion here as to the effect of a declaration of homestead against a lien for general taxes.

*Id.* at 842, n. 4, 638 P.2d 627. Nevertheless, the Court noted that neither the Washington State Constitution nor the statute excepts taxes from homestead protection in Washington. The message to the legislature was that if it wished to make exceptions to the homestead statute, it must do so clearly and directly.

B. *Does the in rem nature of real estate tax obligations exclude them from homestead protection?* RCW 6.12.090, which the Court applied in *Algona v. Sharp,* provided for the exemption of the homestead "from attachment and from execution or forced sale, except as in this chapter provided...." In 1981, this provision was amended and recodified as RCW 6.13.070, and now which reads in pertinent part as follows:

> (1) Except as provided in RCW 6.13.080, the homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in RCW 6.13.030.

■ The trustee places great emphasis on the words "of the owner," construing them to connote that the homestead exemption is not available as to real estate tax debts, where the liability is not personal but *in rem.* There is no legislative history to give a clue as to why this language was added to the statute. However, the Court cannot accept the trustee's suggestion that it was done with the intention of creating an exception for tax liabilities. The message of the *Algona v. Sharp* case is clear: If the legislature wishes to create additional exceptions to the homestead exemption, it must do so clearly and specifically by adding them to the statute's list of exceptions.

In fact the legislature has done so more than once since 1981. In *Pinebrook Homeowners Association v. Owen,* 48 Wash.App. 424, 739 P.2d 110 (1987), the Court ruled that the exceptions contained in the statute could not be construed so as to include homeowner association dues. In response, the legislature added condominium and homeowner association's liens to the list of exceptions contained in RCW 6.13.080. Most recently, the legislature has added construction, maritime, and automobile liens against property claimed as a homestead, presumably to accommodate the addition of a homestead exemption in personal property used as a residence. In short, when the legislature has wanted to add exceptions to the homestead exemption, it has done so clearly and directly. Based on the cases of *Algona v. Sharp* and *Pinebrook Homeowners Association v. Owen,* this Court should not read into the homestead statute any exceptions that are not contained in the statutory list.[1]

Again, the issue of whether the homestead exemption is available against tax foreclosure sales is one of first impression in Washington. This Court concludes for the reasons noted that the exemption is available.

2. *Assuming the homestead exemption is not available following the foreclosure of a lien for real property taxes, may the debtor be deprived of the excess proceeds from the sale of his homestead under the circumstances presented in this case?* Even if the

1. There is one recognized non-statutory exception to the homestead exemption. A creditor obtains an equitable lien on property purchased with fraudulently-acquired funds. In such a case, the debtor may not claim a homestead exemption in the property so acquired. *Webster v. Rodrick,* 64 Wash.2d 814, 394 P.2d 689 (1964); *Christensen v. Christgard, Inc.,* 35 Wash.App. 626, 668 P.2d 1301 (1983).

homestead exemption is not available to the debtor under state law, the Court concludes that the sale in this case cannot cut off the debtor's properly asserted claim of homestead.

 In this connection, there is no contention that the debtor's claim of homestead was improper. No timely objection to the exemption was pursued while this matter was in Chapter 11, nor was an objection filed after conversion to Chapter 7. At this time, it is too late for the trustee to object to its validity. *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). By claiming the property as exempt, the debtor was able to "prevent the distribution" of the proceeds from sale within the context of the bankruptcy case. *Id.* at ——, 112 S.Ct. at 1647.

Further, the County's foreclosure was in clear violation of the automatic stay. As such it was void and of no effect. *In re Schwartz,* 954 F.2d 569 (9th Cir.1992). At the request of the trustee, the stay was annulled and the sale was validated, without prejudice to any person or party asserting a lien or other claim to the surplus. This preservation of rights became a condition of the sale and neutralized any legal consequences that may otherwise have resulted from it. To state it another way, the sale was validated essentially as a sale free and clear of liens, with the trustee receiving and holding the surplus pending a determination of claims to it.

## CONCLUSION

1. In Washington, the homestead exemption is available against a surplus fund arising from a tax foreclosure sale.

2. The debtor's homestead exemption was fixed at the time of the foreclosure sale. The sale was void as a matter of law and under the terms of this Court's order was validated only to the extent and according to the terms set forth in the order. As such the debtor's homestead rights were not affected by the sale.

3. Pursuant to the exemption, the debtor is entitled to $25,000 of the surplus.