Honorable David Skeen Prosecuting Attorney Jefferson County P.O. Box 1220 Port Townsend, WA 98368
Dear Prosecutor Skeen:
By letter previously acknowledged you have requested our opinion on the following paraphrased questions:
 1. May a person avoid the payment of property taxes by claiming to hold the real estate as an allodial freehold estate?
 2. Does the homestead exemption apply to a county's foreclosure action for delinquent property taxes?
 3. If the answer to the second question is that the homestead exemption applies, what procedure may the county follow upon foreclosure for nonpayment of real estate taxes?
 BRIEF ANSWERS
In answer to your first question, it is clear that a property owner may not avoid the payment of property taxes by claiming to own the property in question as an allodial freehold estate. That term has no application to the scope of the modern real property tax, as governed by article 7, section 1 of the state constitution.
In response to your second question, we conclude that the homestead exemption does not apply to a county's foreclosure action for delinquent property taxes. We reach this conclusion because a 1987 amendment to RCW 6.13.070 clarifies that the homestead exemption extends only to "debts of the owner." Our Supreme Court has previously held that debts for unpaid real property taxes attach to the land, and do not become personal debts of the owner. The legislative history accompanying that amendment explains that the bill was intended to clarify that the homestead is not exempt from real estate taxes and assessments.
Our answer to your second question makes it unnecessary to address your third question.
 BACKGROUND
Before analyzing the questions you have posed, it may be helpful to summarize briefly the circumstances underlying those questions. As you describe in your letter requesting this opinion, a property owner in your county has claimed an absolute exemption from the payment of all property taxes. The property owner describes his ownership of property as an "allodial freehold estate."
The same property owner filed a declaration of homestead upon the county records. He attached to that declaration a document entitled "Declaration of Assignee's Update of Patent." The "Declaration" consists of a description of the property, followed by a long recitation of what the property owner apparently believes to be recognized as legal principles regarding land patents. Also attached was a copy of what is described as the original land patent from the United States.
According to the materials you provided, the property owner has expressed his view that the filing of these documents means he no longer has to pay taxes. These statements give rise to your questions as to whether this claim is correct (and you correctly anticipate our conclusion that it is not) and if not, what procedures might be employed in foreclosing on such property for nonpayment of taxes.
 DISCUSSION
Your first question, repeated for ease of reference, inquired:
1. May a person avoid the payment of property taxes by claiming to hold the real estate as an allodial freehold estate?
The legal concept of holding land by "allodial freehold" or "in allodium" traces to the feudal roots of the English system of land tenure. As it operated at the height of the middle ages, feudalism involved a descending pyramid of lords and vassals. The monarch granted tenure to tenants in chief, who in turn often granted portions of their estates to others. Those lower on the pyramid owed certain obligations, in the form of military service, cash, crops, or other services, to the higher lord. This system generated the revenues and services with which the monarch financed the expenses of government and maintained an army. C. Moynihan, Introduction to the Law of Real Property 1-8 (2d ed. 1988).
An allodium is defined as:
 Land held absolutely in one's own right, and not of any lord or superior; land not subject to feudal duties or burdens. An estate held by absolute ownership, without recognizing any superior to whom any duty is due on account thereof.
Black's Law Dictionary 76 (6th ed. 1990). This distinction between property held subject to tenure and in allodium has long since been derogated to mere academic interest. The obligations owed by vassals to their lords, such as providing the services of a particular number of knights, were gradually superseded as society modernized. While concepts of land tenure were initially imported to the American colonies, as evidenced by original royal land grants, such concepts have been abolished with all land, long since held free of feudal obligation. Moynihan, supra, at 18-23.
There is no reason to conclude that the concepts of feudal landholding, including that of the allodial freehold, bear any current relevance to the payment of property taxes. Our state constitution provides for a uniform power of taxation as to all property. Const. art. 7, a 1. "The word `property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership." Id. There can, therefore, be no question but that property taxes can be imposed without regard to whether the subject real estate can be described as allodial.
The Washington State Court of Appeals has rejected the argument that property described as allodial could not be foreclosed for nonpayment of a secured debt. The Federal Land Bank v. Redwine,51 Wn. App. 766, 755 P.2d 822 (1988). In that case, a property owner challenged the right of the bank to foreclose on his mortgage on the basis that he had filed a "Declaration of Land Patent" with the county auditor. Id. at 767. He argued that the filing of the declaration established "paramount title," such that the bank was prohibited from foreclosing on the property. Id. at 769. The court of appeals concluded that a land patent is simply a document "whereby the United States grants public land to private individuals." Id. (citing Hilgeford v. Peoples Bank,607 F. Supp. 536
(N.D. Ind. 1985), aff'd, 776 F.2d 176
(7th Cir. 1985), cert. denied, 475 U.S. 1123
(1986). In that case, however, the document at issue was created and filed by the individual, and was not issued by the United States. It was, therefore, of no legal significance, and did not create a defense to a foreclosure action. Id. Based upon that reasoning, it is not likely that a Washington court would attribute any significance to the filing of a "Declaration of Assignee's Update of Patent."
While Washington courts have not had occasion to apply these principles in a property tax context, the courts of other states have done so. The Pennsylvania court rejected the argument that the assertion of an allodial freehold exempts property from the government's authority to assess property taxes. De Jong v. County of Chester, 510 A.2d 902, 903 (Pa.Commw.Ct. 1986), appeal denied, 522 A.2d 560 (Pa. 1987). The court described that argument as "specious, albeit convoluted," and as "devoid of any merit whatsoever." Id. at 904. Similarly, the Rhode Island court concluded that "the states have retained certain powers to which all private property rights are subject." Albertson v. Leca,447 A.2d 383, 388 (R.I. 1982). Taxation is among those powers, and "is attended by the concomitant power to secure tax payments by levy and sale of property on which taxes are overdue." Id.
It is, therefore, clear that your first question must be answered in the negative. A person may not avoid the payment of property taxes by claiming to hold the real estate as an allodial freehold estate.
Your second question, repeated for ease of reference, inquired:
2. Does the homestead exemption apply to a county's foreclosure action for delinquent property taxes?
This question is analytically distinct from your first question. The background materials you provided indicate that the particular property owner filed the documents in which he asserted an "allodial freehold" as attachments to a homestead declaration. While this fact may suggest something about the owner's subjective understanding of the law, we see no reason why this would affect the homestead declaration if it is otherwise valid. The following analysis, therefore, responds to your question in a general way, without regard to whether the property owner has raised other concepts in connection with filing the homestead exemption.
"The homestead consists of real or personal property that the owner uses as a residence." RCW 6.13.010(1). The state constitution provides, "[t]he legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families." Const. art. 19, a 1. The Legislature has implemented that provision through the enactment of chapter 6.13 RCW.
The general rule is that "the homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in RCW 6.13.030." RCW 6.13.070(1). The referenced statute limits the value of the homestead, in most cases, to the lesser of its net value or thirty thousand dollars. Id.
There are several statutory exceptions to the rule that the homestead is not available against execution or forced sale in satisfaction of judgments. RCW 6.13.080. For example, the homestead exemption does not apply to foreclosure of a mortgage or deed of trust on the property. RCW 6.13.080(2). None of these statutory exceptions expressly relate to property taxes, and our state courts have not previously considered the application of the homestead to property taxes.
The Washington State Court of Appeals has concluded, in a different context, that the statutory list of the types of liens to which the homestead does not apply is exclusive. Algona v. Sharp, 30 Wn. App. 837, 842, 638 P.2d 627 (1982). In that case, the court considered the application of a homestead exemption to a city's local improvement district assessment. While the court specifically stated that it expressed no opinion as to the effect of a homestead declaration against a tax lien, much of the discussion concerned property taxes. Id. at 842 n. 3.
The City relies on cases from other jurisdictions which hold that the tax collection process is independent of and superior to the protection afforded by homestead. In those jurisdictions, however, the relevant constitutions and statutes expressly provide for collection of assessments and taxes against homesteads.
Id. at 841. In Washington, by contrast, the statute did not list assessments and taxes as exceptions to the homestead. The court concluded that the homestead exemption applied to the city's effort to foreclose on the assessment. Id. at 842.
The court of appeals later applied similar reasoning to a foreclosure to collect assessments of a homeowners' association. Pinebrook Homeowners Ass'n v. Owen, 48 Wn. App. 424, 739 P.2d 110
(1987). The court held that the homestead exemption applied to the foreclosure because, "the lien does not qualify as one of the statutory homestead exceptions". Id. at 425. The Legislature responded to Pinebrook by enacting a new exception to cover assessments by homeowners' associations. RCW 6.13.080(5) now provides that the homestead exemption does not apply to such assessments.
While no Washington court has yet considered the application of the homestead exemption to property taxes, the bankruptcy court has recently addressed precisely this question. In Re Cunningham,163 B.R. 593 (Bankr. W.D. Wash. 1994). That case concerned the disposition of the proceeds of a tax foreclosure sale by Yakima County. Id. at 594. The court noted that the question of whether the homestead exemption applies to a tax foreclosure, "is a state law issue of first impression." Id.
The bankruptcy court began by reciting the holding of Algona that the exceptions to the homestead listed in RCW 6.13.080 are exclusive. Cunningham, 163 B.R. at 594-95. Noting that the Algona court had expressly reserved the question of whether the homestead would apply to a tax foreclosure, the court concluded that it does because tax foreclosures are not listed in RCW 6.13.080. Id. at 595.
After Algona (but before Cunningham), the Legislature amended the statute now codified as RCW 6.13.070 to state that, "the homestead is exempt from attachment and from execution or forced sale for the debts of the owner". Laws of 1987, ch. 442, a 207. At least one county prosecutor has concluded that this amendment limits the homestead exemption to the personal debts of the owner, as distinguished from those obligations that attach to real estate and arise from its ownership. Opinion of the Skagit County Prosecutor, dated September 23, 1987.
The Cunningham court considered and rejected this argument. The court explained:
 The trustee places great emphasis on the words "of the owner," construing them to connote that the homestead exemption is not available as to real estate tax debts, where the liability is not personal but is in rem. There is no legislative history to give a clue as to why this language was added to the statute. However, the Court cannot accept the trustee's suggestion that it was done with the intention of creating an exception for tax liabilities. The message of the Algona v. Sharp case is clear: If the legislature wishes to create additional exceptions to the homestead exemption, it must do so clearly and specifically by adding them to the statute's list of exceptions.
Cunningham, 163 B.R. at 595. Citing the example of the legislative reaction to Pinebrook, the court noted that several additional exceptions had been added since 1981. "In short, when the legislature has wanted to add exceptions to the homestead exemption, it has done so clearly and directly." Id.
We do not lightly part company with the bankruptcy court, which is the only court to directly consider your question. Our task in this analysis is to determine the correct answer to a state law question, which the state courts have not addressed. The bankruptcy court's analysis is cogent, and a state court may regard it as persuasive. We depart from it only after careful review, and with great caution.
We conclude, however, that the 1987 amendment to RCW 6.13.070, adding the qualification that the homestead relates only to "debts of the owner," established that the homestead exemption does not apply to debts for unpaid real property taxes.
The bankruptcy court found no legislative history to explain why the words "for the debts of the owner" were added to RCW 6.13.070. Cunningham, 163 B.R. at 595. The court was apparently unaware of both the Legislature's final bill report and the legislative records on file with the Washington State Archives. The final bill report for Substitute House Bill 927 ("SHB 927"), which was enacted as chapter 442, Laws of 1987, explained that the bill clarified "that homestead property is not exempt from real estate taxes and assessments." Final Bill Report for SHB 927, reprinted in 1987 Final Legislative Report at 147.
The Washington State Archives maintains, as historical records, the files of the legislative committees that considered the 1987 amendments. The file of the House Judiciary Committee for SHB 927 includes a lengthy explanation of the bill prepared by its drafter, University of Washington Law Professor Marjorie D. Rombauer. The comments explain that the phrase "for the debts of the owner" previously appeared in RCW 6.16.080, but were removed in a 1981 amendment. Professor Rombauer reasoned:
 Since general real property taxes are not personal liabilities of owners of real property, restoration of the language should remove any question about the enforceability of real property tax liens against homesteads.
Drafter's Comments at 5 (on file with Washington State Archives, House Judiciary Committee file for SHB 927 (1987)).
This legislative history is consistent with previous judicial discussion of the nature of a real property tax debt. The Washington Supreme Court has explained that:
 In the state of Washington, the only way in which [unpaid] taxes on realty may be collected is by the assertion of a lien on the land itself. Rem. Supp. 1943, a 11265 . . . [now RCW 84.60.020]. The lien follows the land, and if the owner on the tax day chooses subsequently to sell or otherwise dispose of his property, there is no way in which he may personally be held responsible at the time of levy.
Timber Traders, Inc. v. Johnston, 87 Wn.2d 42, 47, 548 P.2d 1080
(1976) (quoting Puget Sound Power and Light Co. v. Cowlitz Cy,38 Wn.2d 907, 920, 234 P.2d 506 (1951) (Finley, J. dissenting)) (bracketed material by the court). The United States Supreme Court later relied upon this language as authority for the proposition that, "[l]iability for the ad valorem tax flows exclusively from ownership of realty on the annual date of assessment." County of Yakima v. Confederated Tribes Bands of Yakima Indian Nation,502 U.S. 251, 116 L.Ed.2d 687, 702, 112 S.Ct. 683 (1992). The tax is, therefore, a tax on the land and not on the land owner. Id.
The legislative bill report and the supporting materials in the legislative committee file, record an intention that the 1987 amendments to RCW 6.13.070 clarify that the homestead exemption does not apply to a tax foreclosure. Even if the statutory language, in light of Cunningham, might be regarded as ambiguous, it is our task to determine the legislative intent. In re Sehome Park Care Center, 127 Wn.2d 774, 778, 903 P.2d 443 (1995).
The 1987 amendment followed the court of appeals' decision in Algona and, therefore, changed the way in which the principles announced in that case apply to property taxes. It is of no consequence that the Legislature addressed the point through language limiting the homestead exemption to "debts of the owner," rather than by adding an exception to the list in RCW 6.13.080. The legislative objective was to exclude property tax foreclosures from the homestead exemption. We see no difference between doing this by adding tax foreclosures as an exception to the homestead (as the Cunningham court concluded was necessary), or by limiting the scope of the homestead exemption itself.
We, therefore, respond to your second question by concluding that the homestead exemption does not bar a foreclosure for unpaid real property taxes. We reach this conclusion because we believe it is the only one that takes into account the statutory language limiting the homestead exemption to "debts of the owner," the legislative history, and the view previously taken by Washington courts regarding the nature of the real property tax, while remaining consistent with the principles announced in Algona.
Our answer to your second question makes it unnecessary to address your third question.
We trust this opinion will be of assistance to you.
Very truly yours,
CHRISTINE O. GREGOIRE Attorney General
JEFFREY T. EVEN Assistant Attorney General